COMMONWEALTH *vs.* JOHNNIE H. PERSON.

Hampden. February 2, 1987. — June 1, 1987.

Present: WILKINS, LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Practice, Criminal,* Argument by prosecutor. *Evidence,* Consciousness of guilt, Credibility of witness, Admissions and confessions.

At the trial of an indictment for murder, defense counsel's objections were timely to preserve for appellate review the issues of alleged errors in the prosecutor's closing argument. [139]

At a murder trial, there were prejudicial errors in the prosecutor's closing arguments that because the defendant had sat through his trial he was able to tailor a cover story to answer every detail of the evidence against him [139-141], and that the jury should infer consciousness of guilt from the defendant's decision to consult an attorney promptly after the fatal shooting [141-142].

A new trial was required in a murder case where the prosecutor's improper closing arguments were not limited to collateral issues, where the defendant objected promptly, and where the judge's general instructions to the jury did not mitigate the prejudicial effect of the prosecutor's summation. [142-143]

At a murder trial there was no abuse of discretion in the judge's admission of evidence on the issue of motive that the defendant assaulted the victim seven months before the fatal shooting. [143]

INDICTMENT found and returned in the Superior Court Department on August 2, 1982.

The case was tried before *George J. Hayer,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Maureen B. Brodoff,* Committee for Public Counsel Services, for the defendant.

*William T. Walsh, Jr.,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J. After trial by jury, the defendant, Johnnie H. Person, was convicted of murder in the second degree[1] of Sandra Thomas. The defendant appeals, arguing that the prosecutor improperly commented on the defendant's right to confront the witnesses against him by arguing that the defendant's testimony was "completely tailored" because he sat in the courtroom and listened to the evidence for six days. The defendant also claims that the prosecutor improperly burdened the defendant's exercise of his constitutional right to counsel by arguing that the defendant's prompt communication with an attorney following the shooting constituted evidence of consciousness of guilt. We granted the defendant's petition for direct appellate review, and we conclude that the prosecutor's argument was improper. We reverse and remand for a new trial.[2]

We summarize the facts. On July 31, 1982, the defendant shot and killed the victim in the home he shared with her. The defendant was in the process of moving out of the house because their relationship had so deteriorated that he and the victim had decided to separate.

On the night of the shooting, the defendant had stopped by the house to pick up some of his belongings. Prior to his arrival at the house, the defendant had been to several bars, where he consumed a substantial amount of alcohol. The victim also had been drinking at home with a friend prior to the defendant's arrival.[3]

The evidence showed that a .22 caliber weapon, turned over to the police by the defendant's attorney, fired the bullet which

---

[1] At the close of the Commonwealth's case, the defendant moved for a finding of not guilty on so much of the indictment as charged murder in the first and second degrees. Mass. R. Crim. P. 25(a), 378 Mass. 896 (1979). The judge granted the motion for a finding of not guilty of murder in the first degree and denied the motion for a finding of not guilty of murder in the second degree.

[2] We note that counsel on appeal for the Commonwealth and for the defendant were not trial counsel.

[3] Medical evidence revealed that the victim's blood alcohol level at the time of death was .14.

killed the victim. Moreover, a medical examiner stated that in his opinion the absence of powder burns on the victim indicated that the gun was fired at a distance of at least one to one and one-half feet from the victim's body.

The defendant took the stand and stated that the shooting was accidental. According to the defendant, immediately before the shooting, he was organizing his belongings when he found the .22 caliber weapon. Because his gun license permitted him to possess the gun only at home, he could not take the gun with him. He asked the victim to keep it. At that time, the victim was walking upstairs. The defendant stated that the victim stopped and turned toward him as he walked up a few steps to hand her the gun. According to the defendant, he handed the gun to the victim barrel first. The defendant did not know who had pulled the trigger, but he heard a "pop." He then saw that the victim had been shot.

Given the deterioration in the defendant's relationship with the victim, the defendant said that he fled the house with the gun in his pocket. He drove to a friend's house and, after several telephone calls, communicated with an attorney. The defendant then proceeded to the attorney's office where he gave the attorney the gun. The defendant's attorney telephoned the police to tell them of the accident. The police drove to the attorney's office and the defendant's attorney gave the gun to the police. The attorney took the defendant to police headquarters where he was placed under arrest. The defendant's attorney informed the police that the defendant did not wish to make a statement; therefore, he was not interrogated.

At trial, the defendant's attorney, in summation, argued that the actions of the defendant immediately after the shooting, including calling an attorney, turning over the gun, and turning himself in to the authorities, should be regarded as consciousness of innocence. In response to this line of argument, the prosecutor, in his summation, stated that these actions showed consciousness of guilt. In specific, the prosecutor argued, "Did he say, I'm in trouble, I'd better get a friend? No. He went to a lawyer. He had every right to go to a lawyer, but did Johnnie go to a lawyer to determine his legal rights or to help

build his cover?" Shortly thereafter, the prosecutor noted that "isn't it just a little bit odd that after sitting here for six days and listening to all the testimony he comes in and gives a completely tailored cover story covering every single aspect . . . ."

At this point, defense counsel objected to this line of argument. The objection was overruled. The judge then gave the jury a general instruction that closing arguments are not evidence and that the facts were for the jury to determine. The defendant contends that the prosecutor's two statements impermissibly burden the defendant's right to counsel and his right to be present in the courtroom during the Commonwealth's case. The defendant also argues that the general instructions were not forceful enough to overcome the prejudicial effect of the prosecutor's remarks.

As a preliminary matter, the Commonwealth argues that the defendant has waived his right to raise this issue on appeal because his trial counsel failed to object immediately following the prosecutor's first prejudicial remark. We have said, however, that objection at the conclusion of the prosecutor's argument is sufficient to preserve the defendant's rights. *Commonwealth* v. *Kozec,* 399 Mass. 514, 518 n.8 (1987). *Commonwealth* v. *Johnson,* 374 Mass. 453, 458 (1978). See *Commonwealth* v. *Haas,* 373 Mass. 545, 559 (1977). Defense counsel objected after the prosecutor's second remark and brought the alleged errors to the judge's attention,[4] thus he preserved these issues for appellate review.

The prosecutor's statement, that because the defendant sat through all the Commonwealth's evidence he was able to fabricate a cover story tailored to answer every detail of the evidence against him, was improper. The defendant is entitled to hear the Commonwealth's evidence and to confront the witnes-

---

[4] Defense counsel did not clearly state that he was objecting to both lines of argument. His objection focused primarily on the defendant's right to be in the courtroom. Nonetheless, the prosecutor understood the scope of the problem because he responded that he did not believe his argument was a comment on the defendant's right to be silent or his right to seek legal representation.

ses against him. See *Brooks* v. *Tennessee,* 406 U.S. 605 (1972); *Snyder* v. *Massachusetts,* 291 U.S. 97 (1934); *Commonwealth* v. *Millen,* 289 Mass. 441, cert. denied, 295 U.S. 765 (1935). The Commonwealth bears the burden of proof. *Sandstrom* v. *Montana,* 442 U.S. 510 (1979). The Commonwealth contends that this comment was appropriate because the defendant opened the issue by cross-examining the investigating officers concerning several deficiencies in the police investigation. Because of this defense strategy, the Commonwealth concludes that the prosecutor was justified in making this argument. There is no merit to the Commonwealth's contention.

The defendant may expose any deficiencies[5] in the police investigation. He may argue to the jury that, had the police done certain aspects of their investigation differently, it would have supported his defense. See, e.g., *Commonwealth* v. *Benoit,* 382 Mass. 210, 221 (1981); *Commonwealth* v. *Bowden,* 379 Mass. 472, 485-486 (1980); *Commonwealth* v. *Rodriguez,* 378 Mass. 296, 308 (1979). On appeal, the Commonwealth asserts that by so arguing defense counsel used the defendant's Fifth Amendment rights "unfairly." The Commonwealth also suggests that it is not fair for a defendant to remain silent and then criticize the Commonwealth's case if the defendant has not made known his defense prior to trial. This argument misses the mark. It is fundamental that a defendant need not make a statement prior to testifying, see *Doyle* v. *Ohio,* 426 U.S. 610 (1976); *Commonwealth* v. *Teixera,* 396 Mass. 746, 752 (1986), and a prosecutor may not argue that the jury should draw a negative inference from the fact that the defendant remained silent until he testified. A defendant who does not make a statement prior to testifying is not precluded from exposing deficiencies in the Commonwealth's case.

---

[5] In specific, the defendant argued that the police should have performed an analysis of the fingerprints on the gun. The defendant argued that, had this test been conducted, the fingerprints of the victim on the barrel of the gun would have been revealed, lending support to the defendant's description of the events on the night of the shooting. The defendant also argued that the police should have performed a paraffin test.

Further, by suggesting that the defendant's trial conduct in attacking the Commonwealth's case was inconsistent with innocence, the prosecutor struck at the heart of the defendant's claim that his post-shooting conduct was consistent with an accidental shooting. The prosecutor's response in his summation to the defendant's criticism of the police investigation was improper and prejudicial.

It also is clear that the prosecutor, in his summation, sought to have the jury draw an inference of guilt from the defendant's decision to consult an attorney promptly after the shooting. This he may not do. "The right to the advice of counsel would be of little value if the price for its exercise is the risk of an inference of guilt." *Commonwealth* v. *Burke,* 339 Mass. 521, 533 (1959). See Commonwealth v. *Sazama,* 339 Mass. 154, 159 (1959). A defendant's decision to consult an attorney is not probative in the least of guilt or innocence, and a prosecutor may not "imply that only guilty people contact their attorneys." *Zemina* v. *Solem,* 438 F. Supp. 455, 466 (D.S.D. 1977), aff'd, 573 F.2d 1027 (8th Cir. 1978).[6]

The Commonwealth contends that this argument was appropriate because the defense attorney had argued that the defendant's post-shooting actions were consistent with those of an innocent man. Therefore, the Commonwealth contends that it is entitled to "fight fire with fire." Cf. *Commonwealth* v. *Kozec, supra* at 519. The Commonwealth's purported justification for this argument fails because defense counsel's argument that the post-shooting actions of the defendant were consistent with his claim that the shooting was accidental was not improper. Defense counsel listed the chain of post-shooting events and

---

[6] Accord *United States* v. *Daoud,* 741 F.2d 478, 481 (1st Cir. 1984); *Bruno* v. *Rushen,* 721 F.2d 1193, 1194-1195 (9th Cir. 1983), cert. denied sub nom. *McCarthy* v. *Bruno,* 469 U.S. 920 (1984); *Sulie* v. *Duckworth,* 689 F.2d 128, 131 (7th Cir. 1982), cert. denied, 460 U.S. 1043 (1983); *United States* v. *McDonald,* 620 F.2d 559, 564 (5th Cir. 1980); *United States* v. *Williams,* 556 F.2d 65, 67 (D.C. Cir.), cert. denied, 431 U.S. 972 (1977); *United States ex rel. Macon* v. *Yeager,* 476 F.2d 613, 615 (3d Cir.), cert. denied, 414 U.S. 855 (1973). We add that neither party is entitled to argue an inference of guilt or innocence from the fact that the defendant sought legal assistance.

did not focus solely on the defendant's decision to seek an attorney as evidence of his innocence. The Commonwealth, on the other hand, exceeded the bounds of proper closing argument by asking the jury to draw an inference of guilt that was not fairly warranted from the defendant's decision to seek an attorney rather than a friend. The assistant district attorney erred in arguing that the decision to consult an attorney rather than a friend was evidence of consciousness of guilt.

Because the prosecutor's remarks were improper, we must consider the appropriate remedy. "The consequences of prosecutorial error depend on a number of factors, such as: Did the defendant seasonably object to the argument? Was the prosecutor's error limited to 'collateral issues' or did it go to the heart of the case (*Commonwealth* v. *Shelley,* 374 Mass. 466, 470-471 [1978])? What did the judge tell the jury, generally or specifically, that may have mitigated the prosecutor's mistake, and generally did the error in the circumstances possibly make a difference in the jury's conclusions?" (Footnote omitted.) *Kozec, supra* at 518. See *Commonwealth* v. *Mahdi,* 388 Mass. 679, 696-697 (1983).

We conclude that the prosecutor's summation requires reversal.[7] The Commonwealth's case depended on whether the jurors believed its witnesses or believed the defendant. To suggest that it was improper for the defendant to point out flaws in the Commonwealth's case and to imply that the defendant improperly waited until the Commonwealth had presented its case before testifying adversely reflected on the defendant's conduct and his credibility. The other argument that the conduct of the defendant in seeking an attorney was consistent with consciousness of guilt also casts significant shadow over the defendant's credibility. Thus, the prosecutor's argument was not limited to collateral issues. "We cannot overestimate the effect on the jury of . . . [the] argument tending to show consciousness of guilt on the part of the defendant." *Commonwealth* v. *Cobb,* 374 Mass. 514, 521 (1978).

---

[7] Because the prosecutor's remarks were prejudicial, we do not reach the question whether they are errors of constitutional dimension.

The defendant objected promptly after the prosecutor argued that the defendant had listened to the Commonwealth's evidence to tailor a cover story to fit the evidence. The judge responded promptly with a general charge that statements of counsel are not evidence. The judge did not specifically address the improprieties. The general charge could not have neutralized the prejudicial effect of the prosecutor's argument. See *Commonwealth* v. *Shelley,* 374 Mass. 466, 471 (1978). Because the errors were prejudicial, a new trial is required.

We turn finally to matters which may arise again at retrial. The defendant argues that it was error to admit evidence that he had assaulted the victim seven months before the shooting. This evidence was part of the totality of the Commonwealth's evidence that the relationship was deteriorating, and the judge ruled that this evidence was admissible on the issue of motive. The decision to admit this evidence is largely within the discretion of the judge. *Commonwealth* v. *Gil,* 393 Mass. 204, 216 (1984). Although the other evidence of the deterioration of the defendant's relationship with the victim involved more current incidents, we do not believe that the judge abused his discretion in admitting this evidence.[8]

The judgment is reversed, the verdict is set aside, and the matter is remanded to the Superior Court for a new trial.

*So ordered.*

---

[8] The defendant also challenges the judge's instructions concerning the effect of intoxication. The defendant did not object, however, at the conclusion of the judge's charge. We note that this case was tried prior to our recent decisions concerning the effect of voluntary intoxication. See, e.g., *Commonwealth* v. *Grey,* 399 Mass. 469 (1987); *Commonwealth* v. *Henson,* 394 Mass. 584 (1985). On retrial, these principles should be considered in formulating the instructions concerning the effect of voluntary intoxication.