COMMONWEALTH *vs.* MICHAEL G. ELBERRY. No. 94-P-740. January 26, 1995. *Practice, Criminal,* Argument by prosecutor, Confrontation of witnesses, Instructions to jury. *Evidence,* Consciousness of guilt. *Assault with Intent to Maim.*

The defendant, Michael Elberry, appeals from convictions of acting as a disorderly person (G. L. c. 272, § 53), assault and battery (G. L. c. 265, § 13A), and assault with intent to maim (G. L. c. 265, § 15).[1] (A count of assault with a dangerous weapon, G. L. c. 265, § 15B[*b*], was dismissed at trial.) The defendant complains here about a statement made by the prosecutor in his closing speech to the jury, and about two passages in the judge's instructions. We affirm.

The jury could reasonably have found the following. Elberry was forty-two years old, formerly employed as a certified public accountant but for the last nine years the owner of a bar in Worcester called Mulcahy's. Mulcahy's closed down a few months before the criminal episode. Elberry walked into the Winners Circle bar in Worcester toward midnight or later on September 28 or 29, 1992. Starting, apparently, with some mocking remarks by the bartender about Elberry's losing his business, an argument broke out between Elberry and the bartender, with others joining in. At one point Thomas King, a Westborough police detective present as a patron, tried to intervene and quiet things. Elberry offered to fight King outside. After a few moments' quiet, the argument grew again, and in apparent anger Elberry broke his beer bottle against a pole, retaining the neck. Some shards flew and struck the face of Christina Mann, a patron nearby, drawing blood (she later required stitches above and below an eye). For a half minute Elberry menaced other people with the broken bottle. Then he fled from the bar.

King ran after Elberry with two other patrons following. King, on account, particularly, of the injury to Mann, wanted to detain Elberry until the police came. As King overtook Elberry and grappled to hold him, the pair scuffled. Elberry stuck his thumb deep into King's left eye at least twice. On extricating himself, King found blood and other fluids flowing from his injured eye. When the fracas ended, Elberry said he was getting out of there and made a move to leave, but he was restrained by others at the scene until police arrived. In the meantime King was taken to Memorial Hospital. His eyeball had been cut; he had vision problems with that eye at the time of trial.[2]

---

[1]The defendant was sentenced to ten years' imprisonment at M.C.I., Concord, on the maiming charge, the judge expressing his intention that the defendant serve one year. Concurrent sentences of a year's probation were to be served after the maiming sentence.

[2]In the defendant's version of events, the bottle was broken by accident; the defendant was chased from the bar and was running toward his house when he was tackled by King; and King was gouging the defendant's eye.

1. The prosecutor in his closing statement was responding to a statement of the defendant that attempted to show up inconsistencies in the testimony of various Commonwealth witnesses, and suggested thereby that they had not told the truth. The prosecutor said the inconsistencies were natural among witnesses who had not fabricated a joint story and who, moreover, had not heard one another's testimony, as they had been sequestered at trial. Then he added: "Did any of the witnesses have the opportunity to see exactly how every other witness testified in this case and then tailor their testimony to that evidence? Some of you are shaking your heads. One person did, one witness did, one witness saw every other person testify, the defendant (pointing)." The prosecutor did not make an effort to show "tailoring" but talked of the less credible points in the defendant's characterization of the night's events.

Although the prosecutor's remark had the look of being merely transitional between a defense of the Commonwealth's witnesses and an attack on the defendant's testimony and received no extended emphasis, it was out of bounds and should not have been made. "The prosecutor's statement, that because the defendant sat through all the Commonwealth's evidence he was able to fabricate a cover story tailored to answer every detail of the evidence against him, was improper. The defendant is entitled to hear the Commonwealth's evidence and to confront the witnesses against him." *Commonwealth* v. *Person*, 400 Mass. 136, 139-140 (1987), and cases cited.

With understanding of the impropriety, defense counsel below, as the prosecutor closed, objected to "his comment that the defendant was the only witness who was present throughout all of the proceedings to listen to all of the other witnesses. I think that the court should instruct the jury that obviously the defendant in our system of law, in our system of justice has an absolute right to be present." The judge agreed with the objection and instructed as requested: "I will also tell you at this point that during those proceedings we had a sequestration order, which meant that witnesses were not to discuss the case with other witnesses or anything they observed in the courtroom. Of course, the defendant, who was a witness in this case, was here during the testimony of other witnesses, but he's got every right to be here, too. But you should take everything into consideration in determining credibility, but there is nothing untoward about the defendant being present when other witnesses are testifying."[3] Upon ending his charge, the judge asked counsel whether they had any objections or

---

[3]The defendant criticizes the sentence in the charge beginning "But you should take everything into consideration in determining credibility," suggesting that these words indicated, after all, that the thrust of the prosecutor's statement was correct. The words, not objected to, were simply reiterating that evaluation of credibility involved an all-things-considered judgment. The sentence ends with a reaffirmation: "but there is nothing untoward about the defendant being present when other witnesses are testifying."

requests for further instructions. Both counsel answered in the negative. This disposed of the matter.

To revert to the *Person* case, there the judge overruled defense counsel's objection and gave only a general charge on credibility. So there was uncorrected error. (In fact the prosecutor had blundered still further in citing the defendant's immediate recourse to his attorney after the event as evidence of his consciousness of guilt. *Commonwealth* v. *Person*, 400 Mass. at 138-140.)

2. Although no objection was taken below, the defendant argues on the appeal that the judge's charge on consciousness of guilt was improper. The defendant cannot say that the charge was defective in content, for it was in the conventional terms of *Commonwealth* v. *Toney*, 385 Mass. 575, 585 (1982). Rather he says there was no factual basis for it, because the flight, which alone could provide a basis for the charge, occurred before, not after, the commission of the crimes found by the jury. We need not explore the ramifications of the supposed anomaly. The crime of acting as a disorderly person was committed wholly or at least in part before the flight. Cf. *Commonwealth* v. *Feigenbaum*, 404 Mass. 471, 474 (1989).

3. Again in absence of an objection below, the defendant contends that the judge's instruction on the crime of assault with intent to maim or disfigure was incomplete because it did not state expressly that the defendant was charged with intending to put out or destroy King's eye, thus raising the danger, according to the defendant, that the jury may have convicted even if they believed that the defendant only "intend[ed] to cause a superficial laceration" to King's eye.

The statute, G. L. c. 265, § 15, condemns one who "assaults another with intent . . . to maim or disfigure his person in any way described in the preceding section"; and the preceding § 14 reads, "Whoever, with malicious intent to maim or disfigure, . . . puts out or destroys an eye . . . ." The judge in his instructions spoke of assault and specific intent to maim or disfigure, see *Commonwealth* v. *Robinson*, 26 Mass. App. Ct. 441, 445 (1988); see also *Commonwealth* v. *Davis*, 10 Mass. App. Ct. 190, 196 (1980), and then varied the expression, referring to "cause bodily disfigurement" and to a "disabling or disfiguring injury." We may be quite sure that the jury could not have emerged with the view that evidence of an intent to inflict a "superficial laceration" would be enough to support a conviction. Both counsel, indeed, indicated that the question for the jury was whether the defendant wanted to "take out" or "put out" King's eye.

We add that, if there was error in the instructions attacked on the appeal, it did not raise a substantial risk of a miscarriage of justice.

*Judgments affirmed.*

*Robert L. Sheketoff* for the defendant.
*Patricia C. Smith*, Assistant District Attorney, for the Commonwealth.