COMMONWEALTH *vs.* GEORGE E. JONES.

No. 97-P-1483.

Hampden. June 1, 1998. - July 29, 1998.

Present: LENK, GILLERMAN, & SMITH, JJ.

*Practice, Criminal,* Comment by prosecutor. *Evidence,* Credibility of witness.

At a criminal trial, the improper comments of the prosecutor in closing argu-
ment, to which the defendant objected and which the judge's instructions
did not address, to the effect that the defendant had used the discovery
process to tailor his testimony to the evidence, which went to the main is-
sue at trial, viz., credibility, constituted reversible error, and a new trial
was required. [256-258]

INDICTMENTS found and returned in the Superior Court Depart-
ment on August 21, 1989.

The cases were tried before *Daniel A. Ford,* J.

*Patricia E. Muse,* Committee for Public Counsel Services
(*Benjamin H. Keehn,* Committee for Public Counsel Services,
with her) for the defendant.

*Marcia B. Julian,* Assistant District Attorney, for the Com-
monwealth.

SMITH, J. A Superior Court jury returned guilty verdicts
against the defendant on indictments charging him with break-
ing and entering in the nighttime with intent to commit a felony
(G. L. c. 266, § 16), possession of burglarious implements
(G. L. c. 266, § 49), and wilful and malicious damage to
property (G. L. c. 266, § 127). On appeal, the defendant claims
that the prosecutor's comments in his closing argument
constituted reversible error.[1]

The Commonwealth introduced evidence from which the jury

---

[1]The trial began on December 7, 1989, and concluded with guilty verdicts
on December 11, 1989. The defendant's notice of appeal was timely filed on
January 10, 1990. The case was entered in this court on July 30, 1997.

There is nothing in this court's records indicating the reason for the delay
between the filing of the notice of appeal and the entry of the case in this

could find as follows. In the early morning hours of December 10, 1988, Holyoke Police Officer Westbrook and his partner drove past a Dairy Mart store located on the corner of Lyman and Maple Streets in Holyoke. There, Officer Westbrook noticed the defendant holding a hammer and standing below a broken window near a stack of newspapers. Westbrook drove the cruiser into a parking lot adjacent to the store, whereupon the defendant approached the vehicle, placed his hands on the hood, and was arrested. The defendant was no longer holding the hammer; the officers retrieved it from the ground next to the stack of newspapers.[2] Upon taking him into custody, neither the officers nor the defendant said anything to one another.

The defendant testified that on December 9, he worked as a bus driver until 5 or 5:30 P.M. After work, he went to a friend's house and drank about twelve beers before driving home to Holyoke. Once he was there, the defendant remembered that he had to take his children to a special breakfast celebration later that morning and that he needed gas for his car. He then got back into his vehicle, placed a five dollar bill on the dashboard and began driving to a twenty-four hour gas station in Chicopee.

According to the defendant, as he approached the location of the Dairy Mart he noticed the store's window had been broken. He stopped, got out of his car, stepped on the hammer, picked it up, turned around, and saw a police cruiser. The defendant put the hammer down and walked toward the cruiser as the police officers got out of the vehicle and moved toward him. The defendant testified that he began to explain his presence there, but the officers would not listen, and he was then arrested.

On rebuttal, Officer Westbrook testified that the defendant had only twenty-six cents in his possession when he was searched at the booking desk, and that a search of the defendant's car failed to turn up a five dollar bill or any money at all. In response to a question from defense counsel, the of-

court. At oral argument, the court inquired about the delay, but appellate counsel could not furnish any explanation.

[2]The Commonwealth presented evidence that the newspapers were stacked about three feet high in front of the broken window. Boxes of Massachusetts lottery tickets had been stored inside the store beneath that window. The Commonwealth theorized that the defendant stood on the newspapers to enable himself to reach in the window and remove boxes of tickets; two boxes of such tickets were found outside the store where the defendant had been standing.

ficer testified that he had made out an inventory list of the car contents but had not brought the list with him to court.

In closing argument, defense counsel pitted the defendant's credibility against that of Officer Westbrook. Among other things, she attacked Officer Westbrook for not bringing the inventory list to court.

In response, the prosecutor repeatedly stated in his closing argument that the defendant's prior access to the Commonwealth's evidence through discovery allowed him to find out the police version of the incident, and then falsely conform his trial testimony to meet it. ("One of the crucial things in this case . . . he's got access to the paperwork, he's got to explain that twenty-six cents in his pocket." The prosecutor then stated: "What does [the defendant] give you a year later? That the five bucks was inside the car because he's not going to get any gas for twenty-six cents . . . .") By referring obviously to the defendant's silence at the time of his arrest, the prosecutor also urged the jury to remember that "[the police] don't know what the defendant's position is going to be a year later. . . . They don't know what this man's story is going to be, if anything, in court." In the same vein, the prosecutor stated, "[the police witnesses] don't know in December of '89 that he's going to get on the stand and say, I had five bucks in the car. . . . The first time Westbrook found that out is when he was sitting in the front row and heard George Jones saying it . . . . Then, [Westbrook] is criticized because he didn't bring the property reports. Be fair to him, ladies and gentlemen, he had no way of knowing that was an issue until he walked in this court Friday and heard from the defendant's lips."

At the close of the prosecutor's argument, defense counsel objected to the comments concerning the officer's unfamiliarity, at the time of the defendant's arrest, with the defendant's version of the events later testified to at trial. Defense counsel argued, among other things, that the comments shifted the burden of proof to the defendant. The judge responded that the prosecutor's "alleged transgressions, if they are transgressions" would be cured through the instructions to the jury. However, the judge's charge did not specifically address the defendant's objections.

On appeal, the defendant claims that the prosecutor's comments were improper because they invited the jury to draw the inference that the defendant had used his access to the Com-

monwealth's evidence before and during the trial to falsely conform his testimony to fit the evidence against him. The defendant argues that such comments violate the defendant's right to remain silent at the time of his arrest, his right to be present at his trial, his right to confront the witnesses against him, and his right to testify in his own behalf. The defendant cites *Commonwealth* v. *Person*, 400 Mass. 136, 139-140 (1987), and *Commonwealth* v. *Kowalski*, 33 Mass. App. Ct. 49, 53-54 (1992), in support of his argument.

In *Commonwealth* v. *Person, supra,* at 141-142, the court reversed the judgment and granted a new trial when the prosecutor, in his closing argument, told the jury that the defendant, who had not made a statement prior to trial, had sat through the presentation of the Commonwealth's evidence and, therefore, was able to tailor a cover story to answer every detail in the prosecution's theory. In *Commonwealth* v. *Kowalski, supra* at 54, the prosecutor made similar comments, and we reversed the judgment, stating that the comments were intended "to have the jury draw an inference of guilt from the fact that the defendant remained silent until he testified and had the opportunity to read the [police officer's] statements before trial and to sit through all the Commonwealth's evidence at trial." See *Agard* v. *Portuondo*, 117 F.3d 696, 707-714 (2d Cir. 1997) (Federal habeas relief granted where State court prosecutor improperly argued that defendant had "fit" his testimony into the evidence). Here, the prosecutor's comments were practically identical to those determined to be improper in *Person* and *Kowalski*. "The Commonwealth's case depended on whether the jurors believed its witnesses or believed the defendant. To suggest that it was improper for the defendant to point out flaws in the Commonwealth's case and to imply that the defendant improperly waited until the Commonwealth had presented its case before testifying adversely reflected on the defendant's conduct and his credibility." *Commonwealth* v. *Person, supra* at 142. The prosecutor's comments in this case were improper, and therefore we must consider whether they constituted reversible error. See *Commonwealth* v. *Daggett*, 416 Mass. 347, 352 n.5 (1993).

The following factors are used in order to determine whether improper comments require a new trial. "Did the defendant seasonably object to the argument? Was the prosecutor's error limited to 'collateral issues' or did it go to the heart of the case? What did the judge tell the jury, generally or specifically, that

may have mitigated the prosecutor's mistake, and generally did the error in the circumstances possibly make a difference in the jury's conclusions?" *Commonwealth* v. *Person, supra,* quoting from *Commonwealth* v. *Kozec,* 399 Mass. 514, 518 (1987).

Although the defendant's objection to the prosecutor's comments was not a model of clarity, the objection did call the judge's attention to the claimed errors. The prosecutor's comments were not limited to collateral issues but rather went to the heart of the case, i.e., the credibility issue. *Commonwealth* v. *Shelley,* 374 Mass. 466, 470-471 (1978). The judge's instructions to the jury did not specifically address the prosecutor's improper comments, and his general instructions could not have neutralized the prejudicial effect of the comments. *Commonwealth* v. *Person, supra* at 143.

The Commonwealth argues that if we hold that the comments were improper, a new trial is not required because the evidence against the defendant is overwhelming. However, the Commonwealth's case is overwhelming only if we assume that the defendant's testimony was not credible, which is precisely the issue addressed by the prosecutor's improper argument. Finally, it is not for us to consider whether or not the defendant's testimony was credible. See *Commonwealth* v. *Ford,* 397 Mass. 298, 301-302 (1986) ("[c]redibility is for the jury, not for appellate courts").

The judgment is reversed, the verdict is set aside, and the matter is remanded to the Superior Court for a new trial.

*So ordered.*