## COMMONWEALTH *vs.* GERALD GAUDETTE.

Middlesex. March 2, 2004. - May 24, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Practice, Criminal,* Argument by prosecutor. *Witness,* Credibility, Impeachment. *Evidence,* Credibility of witness, Impeachment of credibility, Prior consistent statement, Relevancy and materiality.

This court reaffirmed its holding in *Commonwealth* v. *Person,* 400 Mass. 136 (1987), that it is impermissible for a prosecutor to argue in closing that the jury should draw a negative inference from the defendant's opportunity to shape his testimony to conform to the trial evidence unless there is evidence introduced at trial to support that argument [765-768]; thus, at a criminal trial, no substantial risk of a miscarriage of justice arose when the prosecutor made such a statement in his closing argument, where the prosecutor had a specific evidentiary basis from which to argue such an inference to the jury [768].

This court concluded that although the prosecutor at a criminal trial improperly sought in his closing argument to inform the jury of a witness's consistent pretrial statement to the police, the error was nonprejudicial because of the overwhelming evidence as to the charges of which the defendant was convicted. [768-771]

The judge at a criminal trial did not abuse his discretion in allowing the victim's sister to testify concerning the extent of the victim's injuries or the length of his recovery, where the judge determined that the testimony was relevant, and where the judge took exemplary cautions to insulate against any potential misuse of the testimony by the jury. [771-772]

INDICTMENT found and returned in the Superior Court Department on October 25, 2000.

The case was tried before *Paul A. Chernoff,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Nadell Hill* for the defendant.

*Kevin J. Curtin,* Assistant District Attorney (*Stephen B. Barton,* Assistant District Attorney, with him) for the Commonwealth.

MARSHALL, C.J. In *Commonwealth* v. *Person,* 400 Mass. 136,

139, 142 (1987), we held that a prosecutor's closing argument that a defendant who "sat through" all of the Commonwealth's evidence "was able to fabricate a cover story tailored to answer every detail of the evidence against him" was improper and (in the circumstances of that case) "require[d] reversal" of the judgment. We are asked by the Commonwealth to reconsider that ruling in light of *Portuondo* v. *Agard*, 529 U.S. 61, 64-65, 75-76 (2000), in which the United States Supreme Court held that a substantively similar remark by a prosecutor did not offend a defendant's Federal constitutional rights.

In this appeal, the defendant also claims that the prosecutor's argument that a witness's testimony was credible because it was consistent with her prior statement to the police was improper because her statement was not in evidence. Finally, the defendant claims that testimony of the victim's sister concerning the victim's injury was irrelevant and prejudicial, and should not have been admitted. We granted the Commonwealth's application for direct appellate review.

We reaffirm that "a prosecutor may not argue that the jury should draw a negative inference from the fact that the defendant remained silent until he testified," *Commonwealth* v. *Person, supra* at 140, but conclude that there was no violation of the *Person* prohibition in this case. Because we also reject the defendant's other claims of error, we now affirm the judgment.

1. *Background.* On December 20, 2001, the defendant was convicted by a Superior Court jury of assault and battery by means of a dangerous weapon.[1] The charge arose from an early morning altercation, the denouement of a series of arguments among several individuals throughout the evening of September 10, 2000. Reviewing the record in its light most favorable to the Commonwealth, *Commonwealth* v. *Latimore*, 378 Mass. 671,

---

[1]The jury also convicted the defendant of leaving the scene of an accident after causing personal injury, leaving the scene of an accident after causing property damage, and operating a motor vehicle so as to endanger. Although the defendant took an appeal from "all guilty verdicts," he makes no argument as to why these convictions should be reversed, and we do not consider them. The jury acquitted the defendant of armed assault with intent to murder, and assault and battery on JoAnne Sayers. The defendant was also indicted for numerous other charges that were nolle prossed.

676-677 (1979), a reasonable jury could have found the following facts.

That evening, the victim, Joseph Dunn, was a patron at a bar where he was friendly with a bartender, JoAnne Sayers. Sayers is the defendant's former girl friend. Sayers and the defendant had a "rocky," "on and off" relationship. Their relationship was "off" on September 10, 2000, and that afternoon, they had an argument. Later, the defendant went to the bar where Sayers worked. When she asked him to leave, he refused to do so. An argument ensued, there was a brief physical confrontation between the two, and the defendant then left. As the evening progressed, the defendant made numerous threatening and harassing telephone calls to Sayers. On one such occasion, Dunn answered Sayers's telephone for her and told the defendant to leave Sayers alone.

Cognizant of the defendant's behavior toward Sayers that night, Dunn and another patron, Kevin Matte, stayed at the bar until it closed, sometime before 2 A.M. on September 11, 2000. They walked with Sayers to her vehicle, where they encountered the defendant sitting on the hood. Sayers said, "Get off my car" and told the defendant that she had "nothing to say" to him. The defendant and Dunn engaged in an argument, the two yelled at each other, and Dunn knocked the defendant's hat off his head. Sayers then left in her car.

Matte, who apparently was not involved in the argument, entered his vehicle, a Ford Bronco, and persuaded Dunn to let him drive him home. As they drove away, the defendant followed in his pickup truck. Matte eventually pulled into a parking lot and stopped his vehicle. The defendant followed and drove his pickup truck into the back of the Bronco. Dunn stepped out of the Bronco, again yelling at the defendant. As Matte was getting out of his vehicle, the defendant drove toward Dunn and struck him with his truck. Matte saw Dunn "bouncing off the hood of [the defendant's] truck and landing on the ground"; he testified that the sound was "like a bat cracking." A resident of the neighborhood testified that he heard "tires squealing and people screaming" and saw the pickup truck bump Dunn. The truck then backed up, accelerated, and "went right after [Dunn]," dragging him several feet. The defendant then immediately drove away at high speed. Matte attempted to

follow him, but soon returned to assist Dunn, who was unconscious and bleeding profusely. Matte telephoned the police and Sayers. A few minutes later Sayers received a telephone call from the defendant, who said to her, "Is that the biggest dude you got, because I just took care of him." It was later determined that the victim suffered multiple fractures to his skull, and extensive bleeding and swelling in the brain, consistent with "massive blunt force trauma."

At the trial, the defendant admitted that his vehicle had hit the Bronco and had hit the victim. He claimed, however, that this was an accident, as he responded to what he said were aggressive, threatening actions by the driver of the Bronco. He also admitted that he had left the scene. His principal theory at trial was that he did not possess the requisite state of mind for the charge of armed assault with intent to murder or assault and battery by means of a dangerous weapon.

2. *The defendant's opportunity to tailor his testimony to the evidence.* The defendant testified at trial. Relying on *Commonwealth* v. *Person*, 400 Mass. 136, 139 (1987), the defendant argues, for the first time on appeal, that the prosecutor's statement in his closing argument to the effect that the defendant had been able "to shape" his trial testimony to conform to the evidence against him requires reversal of his conviction of assault and battery by means of a dangerous weapon.[2,3] We review

---

[2]As to his other convictions, see note 1, *supra.*

[3]The defendant points to the following statements by the prosecutor:

"Now, you're going to have to make a determination as to credibility of witnesses, who you're going to believe in whole or in part, and who you're not going to believe. On the one hand, you have a hodge-podge of Commonwealth witnesses [who] testified to different aspects of that particular night, who came in here independently and were not watching other people testify. And then you have the other story, the defendant's story, the story that had the benefit of being able to sit here and watch everybody else testify, the ability to shape his testimony to the contours of what he wanted you to believe people were saying; and if it hurt him, what he didn't want you to believe people were saying. . . .

"He had the opportunity to sit and observe the entire Commonwealth's case go into evidence before he testified. He had the benefit. And he was able, the Commonwealth submits, to shape his testimony accordingly to provide the best light possible to support his story about what happened."

the claim for a substantial risk of a miscarriage of justice, noting that "[t]he remarks at issue must be judged within the context of the entire argument, the facts of the case and the rationale underlying the *Person* principle." *Commonwealth* v. *Sherick*, 401 Mass. 302, 303 (1987).

The United States Supreme Court has held that such comments do not offend a defendant's Federal constitutional rights to be present at his trial, to confront witnesses, to testify in his own behalf (Fifth and Sixth Amendments to the United States Constitution), or to due process (Fourteenth Amendment to the United States Constitution). *Portuondo* v. *Agard*, 529 U.S. 61, 65, 74-75 (2000). The defendant does not argue that the prosecutor's statements violated his rights under our State Constitution, so we need not, and do not, consider any such claim.[4] The defendant relies solely on *Commonwealth* v. *Person*, *supra*, where a prosecutor's comments were deemed prejudicial and required reversal, a ruling that was not constitutionally based. *Id.* at 142 n.7 ("Because the prosecutor's remarks were prejudicial, we do not reach the question whether they are errors of constitutional dimension"). Cf. *Portuondo* v. *Agard*, *supra* at 73 n.4 (court's decision is "addressed to whether the comment is permissible as a constitutional matter, and not to whether it is always desirable as a matter of sound trial practice"); *Commonwealth* v. *Martinez*, 431 Mass. 168, 176-177 (2000) (applying *Person* rule one month after *Portuondo* v. *Agard*, *supra*, was decided, but finding error did not require

---

[4]In the wake of *Portuondo* v. *Agard*, 529 U.S. 61 (2000), several State courts have reconsidered their earlier rulings concerning a prosecutor's comments on a defendant's opportunity to tailor his testimony to conform to the evidence, reaching varying conclusions. In *State* v. *Hart*, 303 Mont. 71, 83-85 (2000), the Supreme Court of Montana declined to consider whether such comments violated a defendant's State constitutional rights because the issue had been waived. In *State* v. *Alexander*, 254 Conn. 290, 296, 300 (2000), the Supreme Court of Connecticut overruled an earlier decision prohibiting such comments, *State* v. *Cassidy*, 236 Conn. 112, 127-128, cert. denied, 519 U.S. 910 (1996), because the earlier ruling had been based on Federal constitutional grounds. The *Alexander* court declined to decide whether the State Constitution prohibited such statements, noting that "[t]o the extent" the defendant had briefed a State constitutional claim, the court was "not persuaded by his argument." *Id.* at 296 n.9. See *State* v. *Miller*, 110 Wash. App. 283, 284-285 (2002) ("*Portuondo* effectively overrules [contrary State court decisions] insofar as they state a different rule").

new trial). For the reasons we explained in *Commonwealth* v. *Person, supra* at 140-142, and *Commonwealth* v. *Beauchamp,* 424 Mass. 682, 690-691 (1997), it is impermissible for a prosecutor to argue in closing that the jury should draw a negative inference from the defendant's opportunity to shape his testimony to conform to the trial evidence unless there is evidence introduced at trial to support that argument. In this case there was such evidence, as we shall explain.

It is a long-standing rule that closing arguments must be "[w]ithin the bounds of the evidence and the fair inferences from the evidence . . . ." *Commonwealth* v. *Gilmore,* 399 Mass. 741, 745 (1987). In *Commonwealth* v. *Beauchamp, supra* at 691, we stated that a prosecutor may "impugn the defendant's credibility and argue that his story is a fabrication," but may not "elicit evidence of the defendant's silence, his request for an attorney, or the discussions the defendant had with his attorney to argue that these were evidence that the defendant fabricated his story." See *Commonwealth* v. *Moore,* 408 Mass. 117, 130-132 (1990) (prosecutor's "argument focused on the quality of the evidentiary picture the defendant was trying to paint, which is, of course, a proper subject for argument"). As these cases make clear, a prosecutor may, if there is a basis in the evidence introduced at trial, attack the credibility of a defendant on the ground that his testimony has been shaped or changed in response to listening to the testimony of other witnesses. See *id.* (prosecutor's remarks "did not implicate any of the principles in the *Person* case" because they "dealt with the differences between the defendant's pretrial statements to the police and to other witnesses . . . brought out in the evidence at trial"); *Commonwealth* v. *Sherick, supra* at 303, 304 (prosecutor's comment that defendant "listened to all of the testimony sitting right here before he took that stand" was not error where, "in stark contrast to *Person,*" prosecutor was attacking "the defendant's credibility by making specific references to instances where the defendant changed his account"). As we explained in *Commonwealth* v. *Moore, supra* at 130, the prosecutor's "argument in *Person,* to the effect that the defendant's trial testimony was a fabrication, was improper and prejudicial because no *evidence* existed to support the argument" (emphasis added). See *Commonwealth* v. *Sherick, supra*

at 304 ("In *Person*, the prosecutor baldly stated that, because the defendant had been able to sit in court and listen to all the State's witnesses, he had fabricated his trial testimony. Yet there was no *evidence* to support the prosecutor's assertion" [emphasis in original]). See also *State* v. *Hemingway*, 148 Vt. 90, 91-92 (1987) (same).

There was ample evidence at trial to support the prosecutor's closing statements the defendant now challenges. During cross-examination, the prosecutor questioned the defendant about statements he had made to the police shortly after the incident, drawing out the differences between those statements and the defendant's trial testimony, and the differences between the defendant's testimony and the testimony of other witnesses. This was a perfectly sound line of questioning, properly designed to undermine the defendant's credibility. The defendant correctly does not suggest that the cross-examination was improper. See *Commonwealth* v. *Beauchamp*, 424 Mass. 682, 690-691 (1997); *Commonwealth* v. *Moore*, *supra*; *Commonwealth* v. *Sherick*, *supra*. He argues only that the prosecutor's summation was in error. But here, unlike *Commonwealth* v. *Person*, *supra*, the prosecutor had a specific evidentiary basis from which to argue to the jury that they could infer that the defendant had been able "to shape" his testimony to conform it to the trial evidence. There was no error.[5]

3. *Prosecutor's reference to defense failure to impeach.* In the hours immediately after the incident, JoAnne Sayers gave a statement to the police. She testified at trial; the police report of her pretrial statements was not in evidence. In his closing argument, the prosecutor argued that Sayers was a credible witness because she had not been impeached by the defense with any prior inconsistent statements. Defense counsel objected to this line of argument and also moved for a mistrial at the end of the

---

[5]In *Commonwealth* v. *Person*, 400 Mass. 136, 142 (1987), we stated that the error in that case "require[d]" reversal. To the extent that a prosecutor's summation does violate the *Person* prohibition, we would consider such an error under the appropriate standard of review, here a miscarriage of justice because there was no objection at trial. A *Person* error does not, of course, automatically require reversal of a conviction.

Commonwealth's closing argument, which was denied. The defendant claims both that the prosecutor improperly shifted the burden of proof to the defendant and that the prosecutor improperly relied on facts not in evidence to argue an inference to the jury. We review for prejudicial error. See *Commonwealth v. Flebotte,* 417 Mass. 348, 353 (1994). We agree that the prosecutor's argument was improper.

"As a general matter, a witness's prior statement that is consistent with his testimony at trial is inadmissible." *Commonwealth v. Rivera,* 430 Mass. 91, 99 (1999). However, a prior consistent statement may be used "to rebut the claim of recent fabrication, not to prove the truth of the matter." *Commonwealth v. Martinez,* 425 Mass. 382, 396 (1997). See *Commonwealth v. Zukoski,* 370 Mass. 23, 27 (1976) ("Unless admissible on some other ground to prove the truth of the facts asserted, such a prior consistent statement is admissible only to show that the witness's in-court testimony is not the product of the asserted inducement or bias or is not recently contrived as claimed"); P.J. Liacos, M.S. Brodin, & M. Avery, Massachusetts Evidence § 6.13 (7th ed. 1999) ("For reasons of efficiency, logic and policy, evidence enhancing credibility is generally not admissible to bolster the testimony of a witness who has not been impeached").

During his cross-examination of Sayers, defense counsel did not suggest that her trial testimony was of recent contrivance. Accordingly, any pretrial statement of Sayers, unless inconsistent with her trial testimony, would not have been admissible at trial. See *Commonwealth v. Martinez, supra* at 396, quoting *Commonwealth v. Zukoski, supra* at 26. By arguing that the jury could draw an inference that the trial testimony of Sayers was credible because it was consistent with her pretrial statements to the police, the prosecutor improperly sought to bolster her testimony in general and to vouch in particular for her testimony at trial that the defendant had telephoned her immediately after the incident and said, "Is that the biggest dude you got, because I just took care of him." (That statement was highly probative of the defendant's state of mind when he injured Dunn.) The

prosecutor, in short, attempted to achieve by inference what he could not achieve directly: inform the jury of Sayers's consistent pretrial statement to the police. This is impermissible; counsel was simply attempting an "end run" around our rules of evidence and their limitations on the use of prior consistent statements.

The prosecutor's argument that "[t]he question wasn't asked [by defense counsel] because she did tell that [the defendant's postincident telephone call] to the police," also implied that he, the prosecutor, knew the contents of the police report. We have held in other contexts that the Commonwealth may not suggest that it "has special knowledge by which it can verify the witness's testimony." *Commonwealth* v. *Ciampa*, 406 Mass. 257, 265 (1989) (use of plea agreements). Cf. *Commonwealth* v. *Rivera, supra* at 96 (prosecutor "may not 'explicitly or implicitly' vouch to the jury that she knows the witness's testimony is true" because of plea agreement). "Counsel may not refer to or suggest their knowledge of matters not in evidence." *Commonwealth* v. *Hoppin*, 387 Mass. 25, 30 (1982). The prosecutor's comments here are akin to those cases.

While the argument was improper, a careful reading of the evidence leads us to conclude that the error was nonprejudicial. See *Commonwealth* v. *Flebotte, supra* at 353. The defendant admitted that he hit the victim with his truck, evidence supporting the charge of which he was convicted, assault and battery by means of a dangerous weapon. The defendant's pre-incident statement to Sayers that he "took care" of the victim was most relevant to the charge of attempted murder, for which the Commonwealth had to prove specific intent. But the defendant was acquitted of that charge. Moreover, there was overwhelming evidence as to the charges of which the defendant was convicted. In particular, two witnesses testified about the statement of the defendant to Sayers, which the prosecutor's closing argument sought to bolster.[6,7] In light of

---

[6] The defendant's statement to Sayers was admitted in evidence through the testimony of Matte and a woman who lived nearby as spontaneous utterances by a "frantic" and "hysterical" Sayers.

[7] The judge also emphasized to the jury that prior out-of-court statements by a witness were to be considered only for purposes of credibility.

this, the prosecutor's improper argument did not substantially sway the jury's verdict.[8],[9] See *id.*

4. *Testimony of victim's sister.* The judge did not abuse his discretion in allowing the victim's sister to testify concerning the extent of the victim's injuries or the length of his recovery.[10] Nor was there error in denying the defendant's motion for a mistrial on this basis.[11] See *Commonwealth* v. *Amirault,* 404 Mass. 221, 232 (1989). Family members of a victim may testify about relevant issues, as long as the testimony is not offered "for the sole purpose of creating sympathy." *Commonwealth* v. *Rock,* 429 Mass. 609, 615 (1999). Here, the judge determined that the testimony was relevant because the victim's extensive injuries tended to support the prosecution's theory that the defendant was driving fast and intended to inflict harm on the victim, and to contradict the defendant's theory that his truck was moving slowly and that the vehicle's contact with the victim

---

[8]For essentially the same reasons, we reject the defendant's argument that the prosecutor's use of rhetorical questions prejudiced the defendant or could have been perceived by the jury as shifting the Commonwealth's burden. See *Commonwealth* v. *Habarek,* 402 Mass. 105, 111 (1988) ("As a general rule, however, rhetorical questions should not be used in closing argument where they could be perceived by the jury as shifting the Commonwealth's burden of proof to the defendant"). The judge's instructions clearly and forcefully stated the Commonwealth's burden of proof. See *id.*

[9]The defendant also argues that the prosecutor improperly mischaracterized the testimony of a police officer who interviewed the defendant. The officer testified that the defendant stated that Matte's Bronco "tapped" the defendant's truck, and then hit it again, a "more significant" hit. When recounting this testimony in his closing argument, the prosecutor omitted the word "more." Even if we agreed that this was a misstatement of the evidence, it would not constitute reversible error. *Commonwealth* v. *O'Connell,* 432 Mass. 657, 660 (2000) (minor inaccuracy in prosecutor's closing does not constitute reversible error in context of entire case). We think it more likely that the jury understood the prosecutor to be arguing that the second "hit" was so much greater than the first that the defendant had told the police he feared for his life. This argument conformed to the officer's testimony.

[10]His sister testified that the victim was an inpatient in various rehabilitation facilities for approximately six months, and that he has no left peripheral vision, suffers from memory loss, and cannot drive or work.

[11]The defendant moved for a mistrial at the close of the testimony of the victim's sister.

was minor and accidental.[12] To ensure against any emotional, and potentially prejudicial, testimony, the judge specifically limited the sister's testimony and instructed the prosecutor to limit himself to narrow, focused questions. These exemplary cautions by the judge, together with his carefully crafted instructions that neither sympathy nor emotions should cloud the jury's consideration of the facts in evidence, insulated any potential misuse of the testimony by the jury.

*Judgment affirmed.*

---

[12]The victim testified at trial that he had no memory concerning the incident from the time he stepped out of the vehicle.