COMMONWEALTH *vs.* WILLIAM RUSSELL.

No. 97-P-1959.

Middlesex. October 8, 1998. - February 10, 1999.

Present: LAURENCE, KAPLAN, & RAPOZA, JJ.

*Practice, Criminal,* Required finding, Reasonable doubt. *Abuse Prevention.*

The circumstantial evidence at a criminal trial, and the reasonable inferences drawn therefrom, were sufficient to warrant a rational jury to conclude beyond a reasonable doubt that the defendant violated a no-contact restraining order, directly or through another. [310-312]

COMPLAINT received and sworn to in the Cambridge Division of the District Court Department on January 7, 1997.

The case was tried before *Mark S. Coven,* J.

*Gregory M. Doyle* for the defendant.

*Lincoln S. Jalelian,* Assistant District Attorney, for the Commonwealth.

LAURENCE, J. The sole issue on appeal is whether a District Court judge properly denied the motion of the defendant, William Russell, for a required finding of not guilty at the close of the Commonwealth's case.[1] The Commonwealth had proceeded against the defendant for violation of an outstanding "no contact" restraining order, contrary to G. L. c. 209A, § 7, by telephoning his former wife (wife) from his jail cell on December 15, 1996, and by enlisting a third person to place a telephone call to his wife on that same date.[2] The defendant as-

---

[1] The defendant did not offer any evidence, and the case went to the jury after the denial of the motion for a required finding.

[2] The defendant was charged with two counts of violation of a restraining order that the wife had applied for and received, pursuant to G. L. c. 209A, against the defendant on December 12, 1996. Count A of the complaint alleged a violation on December 12, 1996, and count B alleged a violation on December 15, 1996. The counts did not particularize the nature or means of the offenses. The judge allowed the defendant's motion for a required finding

serts that the judge erred because the evidence of his guilt was entirely circumstantial; because there was "no actual proof" that he was responsible for the December 15 call by the third person; and because the evidence was equally susceptible of an explanation consistent with his innocence. We agree with the Commonwealth that the judge did not err and that the evidence offered by the Commonwealth was sufficient to persuade a rational jury beyond a reasonable doubt of the existence of every element of the crime charged.

Although the defendant makes a cursory bow to the principle of review applicable to his situation — that we view the evidence and all reasonable inferences therefrom in the light most favorable to the Commonwealth, see *Commonwealth* v. *Latimore,* 378 Mass. 671, 676-677 (1979); *Commonwealth* v. *Bennett,* 424 Mass. 64, 68 (1997); *Commonwealth* v. *Rivera,* 425 Mass. 633, 648 (1997) — his contentions fail to reflect or appreciate the breadth of this fundamental concept:

> " '[The] question is whether, after viewing the evidence [and all permissible inferences] in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' *Commonwealth* v. *Latimore,* 378 Mass. 671, 677 (1979), quoting *Jackson* v. *Virginia,* 443 U.S. 307, 318-319 (1979). See Mass. R. Crim. P. 25(a), 378 Mass. 896 (1979). The question of guilt cannot be left to conjecture or surmise. *Commonwealth* v. *Anderson,* 396 Mass. 306, 312 (1985). Mere opportunity to commit the crime or presence at the scene is insufficient without other evidence. *Commonwealth* v. *Cordle,* 404 Mass. 733, 742 (1989), and cases cited. However, circumstantial evidence is competent to establish guilt beyond a reasonable doubt. *Commonwealth* v. *Nadworny,* 396 Mass. 342, 354 (1985), cert. denied, 477 U.S. 904 (1986). An inference drawn from circumstantial evidence 'need only be reasonable and possible; it need not be necessary or inescapable.' *Commonwealth* v. *Beckett,* 373 Mass. 329, 341 (1977)."

of not guilty at the close of the Commonwealth's case as to count A, on the ground that the Commonwealth had failed to establish the defendant's knowledge of the terms of the restraining order at the time of the alleged December 12 incident.

(Emphasis original.) *Commonwealth* v. *Gilbert*, 423 Mass. 863, 868 (1996).

Moreover, the evidence and the permissible inferences therefrom need only be sufficient to persuade "minds of ordinary intelligence and sagacity" of the defendant's guilt. *Commonwealth* v. *Latimore*, 378 Mass. at 677. Fact finders are not "required to divorce themselves of common sense, but rather should apply to facts which they find proven such reasonable inferences as are justified in the light of their experience as to the natural inclinations of human beings." *Commonwealth* v. *Arias*, 29 Mass. App. Ct. 613, 618 (1990), quoting from *United States* v. *Smith*, 680 F.2d 255, 260 (1st Cir. 1982), cert. denied, 459 U.S. 1110 (1983). To the extent that conflicting inferences are possible from the evidence, it is for the fact finder to resolve the conflict. *Commonwealth* v. *Wilborne*, 382 Mass. 241, 245 (1981).

The jury could reasonably have found the following facts under these standards: On December 12, 1996, the defendant's wife applied for and received a restraining order against the defendant commanding him to have no contact with her either directly or indirectly for one year. As of December 15, 1996, the defendant had received knowledge of the contents of the order. On December 15, 1996, the defendant was confined in the Bravo South 1 unit of the Plymouth County Correctional Facility.[3] The facility's records showed that on December 15, 1996, four collect telephone calls were made to the wife's number at her home in Cambridge by someone in the Bravo South 1 unit. (Prisoners there were allowed to make telephone calls.) The wife had never received collect calls in the past from anyone but the defendant, and she accepted none of the December 15 calls. At approximately 5:45 P.M. on December 15, the wife received a telephone call at her home from a person whose voice she did not recognize. The caller said he was a friend of the defendant (referring to the defendant by his nickname, "Butchie") and asked the wife if the defendant could call her collect. The wife responded that she would call the police, hung up the phone, then called the police. On December 19, 1996, the defendant was transferred to a unit at the Plymouth County Correctional facility designated "Pod E3." On

[3]The defendant was incarcerated there from December 12 through December 18, 1996. The reason for his incarceration is not contained in the record, but the charges appear to have been unrelated to his domestic situation.

December 26, 1996, a call was made to the wife's home phone from Pod E3.

This circumstantial evidence against the defendant and the reasonable inferences therefrom, while not overwhelming, provided a satisfactory basis for a rational trier of fact to find the most critical element of the crime charged — the defendant's violation of the no contact restraining order directly or through another beyond a reasonable doubt.[4] The *Latimore* standard, as described above, was satisfied here. See *Gelmette* v. *Commonwealth*, 426 Mass. 1003, 1003-1004 (1997). "A web of convincing proof [sufficient to find guilt beyond a reasonable doubt] can be made up of inferences that are probable, not necessary." *Commonwealth* v. *Best*, 381 Mass. 472, 483 (1980). The possibility of raising conflicting inferences from the evidence does not preclude allowing the fact finder to determine where the truth lies. *Commonwealth* v. *Martino*, 412 Mass. 267, 272 (1992).[5]

The jury, properly charged to draw "reasonable and natural" inferences from the evidence "based on [their] common sense and experience of life," see *Commonwealth* v. *Arias*, 29 Mass. App. Ct. at 618, would not have had to resort to speculation or irrational thinking to find the defendant responsible for the four December 15 calls made to the wife from Bravo South 1 and for procuring the December 15 call to the wife made by the unknown caller, who had essentially sought to induce her, on the defendant's behalf, to accept his collect calls which she had hitherto rejected. See *Commonwealth* v. *Collier*, 427 Mass. 385, 389 (1998) (when it is claimed that a third party committed an act that would have violated c. 209A, § 7, if committed by the defendant, there must be proof that the defendant intended the act that resulted·in the violation, but such proof may consist of reasonable and possible inferences drawn from circumstantial evidence).

Although the defendant implicitly invokes a familiar maxim (that "[w]hen the evidence tends equally to sustain either of two inconsistent propositions, neither of them can be said to be

---

[4]The other elements of the offense — the issuance and contents of the order, its effectiveness on December 15, 1996, and the defendant's knowledge thereof — were established and not disputed as to the December 15 incident.

[5]The defendant in fact concedes that "one possible hypothesis [arising from the evidence] is that the defendant used the caller to contact the alleged victim" on December 15.

established by legitimate proof," see *Commonwealth* v. *Eramo*, 377 Mass. 912, 913 [1979]),[6] that principle finds no application here, because the evidence and inferences were not as equally probative of innocence as of guilt. See *Commonwealth* v. *Latney*, 44 Mass. App. Ct. 423, 425-426 (1998). In particular, the conjectured exculpatory inferences — (a) that some unknown and unidentifiable person who happened to be residing in the very jail unit in which the defendant was incarcerated would know the wife's home number and proceed to make multiple collect calls to her, for no apparent reason and coincidentally on the heels of the defendant's learning of the restraining order; and (b) that someone outside the jail would call the wife purportedly on the defendant's behalf but actually motivated by an inexplicable desire to get him into trouble — were, in the ordinary course of events and in light of natural human inclinations, far less compelling or even plausible than the common sense deduction that the defendant himself had made the collect calls to the wife and then instigated the third person's call to her in the wake of her apparent rejection of his contact or nonresponsiveness to it.

Moreover, contrary to the defendant's intimation, the Commonwealth's proof in a criminal trial need not exclude all possible exculpatory interpretations of the evidence. See *Commonwealth* v. *Merola*, 405 Mass. 529, 533-534 (1989). Nor is it necessary for the Commonwealth to negate the possibility that someone else other than the defendant might have committed the crime charged. See *Commonwealth* v. *Medeiros*, 354 Mass. 193, 197 (1968); *Commonwealth* v. *Casale*, 381 Mass. 167, 175-176 (1980).

In this case, the fact finders did not have to make a leap of wild surmise with respect to the essential element at issue. There was no evidentiary gap in the Commonwealth's case, merely a question of the weight to be accorded to a chain of circumstantial evidence logically, even if not infallibly, connecting the defendant to the offenses charged. See *Commonwealth* v. *Donovan*, 395 Mass. 20, 25 (1985). While the jury would

---

[6]As noted above, the defendant asserts (citing no authority) that "while one possible hypothesis is that the defendant used the caller to contact the alleged victim, it is just as likely and reasonable to assume it was someone who wanted the defendant in trouble." No evidence supporting this speculative assumption appears in the record. The defendant makes no such argument as to the four collect calls made to the wife on December 15, 1996, from the very unit in which he was then incarcerated.

have been entitled to reject the Commonwealth's theory, its case was properly submitted to them for consideration and rationally supported conviction beyond a reasonable doubt.

*Judgment affirmed.*