## COMMONWEALTH *VS.* ROBIN M. MURRAY.

No. 98-P-1884.

Worcester. February 9, 2000. - February 26, 2001.

Present: BROWN, PORADA, & BECK, JJ.

*Practice, Criminal,* Lesser included offense, Instructions to jury. *Assault and Battery. Homicide. Attempt. Intent. Malice.*

This court concluded that simple assault is not a lesser included offense of attempted murder except to that portion of G. L. c. 265, § 16, that pertains to attempted murder by poison, strangulation, or drowning, and, as a consequence, at the trial of indictments for attempted murder and arson, the judge did not err in declining to instruct the jury on simple assault as a lesser included offense. [60-62]

At the trial of indictments for attempted murder, the judge's instructions to the jury on specific intent and malice were not erroneous and did not create a substantial risk of a miscarriage of justice. [62-63]

INDICTMENTS found and returned in the Superior Court Department on January 21, 1997.

The cases were tried before *Daniel F. Toomey*, J.

*Laurie M. Halbert* for the defendant.

*Anne S. Kennedy*, Assistant District Attorney, for the Commonwealth.

BROWN, J. The defendant appeals from her conviction on one count of burning a dwelling house and two counts of attempted murder. On appeal, the defendant contends that the trial judge erred in instructing the jury in several respects. There was no error.

Viewing the evidence in the light most favorable to the Commonwealth, the jury reasonably could have found the following facts. On October 13, 1996, the defendant and her two sons, Joseph and Jonathan, were at their home in Brookfield. Joseph, who was approximately ten years old, went to the basement to speak with the defendant. Upon entering the basement, Joseph

saw the defendant, who had poured paint thinner onto the cement floor of the basement, lighting pieces of paper on fire and throwing them into the puddle of paint thinner. Jonathan, then approximately seven years old, was in the basement with the defendant at this time.

Joseph then went upstairs to the living room. Shortly after, the defendant and Jonathan entered the living room and the defendant told both boys that she was doing a psychology experiment for a class. She told the boys she wanted them each to take some pills she had made that would make them "fart" and the first one to "fart" would win the contest. The defendant told the boys the pills would work better if they lay down and slept after taking them. The defendant gave each boy three blue pills with the word "Unisom" on them and then put each boy to bed in his respective room.

Later the same morning, the defendant called her fiancé, Rob Waxlax, and asked if she could borrow his daughter's computer. Waxlax testified that the defendant seemed normal and did not seem upset or excited during that phone call. About one-half hour after the first call, the defendant telephoned Waxlax again, this time saying, "I want to die," or "I'm dying." The telephone then went dead. After several attempts to reach the defendant by phone, Waxlax called the Brookfield police department and told the police that he thought the defendant might be attempting suicide.[1]

In response to Waxlax's phone call, State police troopers were dispatched to the defendant's home to investigate the possible suicide. Trooper Langton arrived at the defendant's home at approximately 12:30 p.m.[2] Upon entering the house, Trooper Langton noticed a strong odor of smoke and vapors. Trooper Langton testified that there was some smoke in the house and that an outdoor gas grill had been placed in the middle of the

---

[1]The defendant's theory at trial was insanity or, in the alternative, that she was not capable of forming the specific intent necessary for the alleged offenses due to mental impairment. The defendant presented evidence that she had been seeing a psychologist for approximately eight years, ending in August of 1996 due to financial difficulties. Her psychologist testified that the defendant was diagnosed with a bipolar disorder and posttraumatic stress disorder with an "axis to dependent personality."

[2]Paramedics and firefighters for the Brookfield fire department also responded to the defendant's home.

living room with the propane tank on and the grill turned onto high.

Trooper Langton climbed the stairs to the second floor and went into the defendant's bedroom where he saw her lying unconscious with the phone off the hook. The defendant did not respond when Trooper Langton tried to wake her and her pulse and respiration were weak. The defendant had rosary beads wrapped around her hands and there was a small bag of "Unisom" gel caplets on the bed next to her.

Ultimately, both boys were discovered and taken out. Both were very lethargic, sleepy, and largely unresponsive when the paramedics tried to awaken them. Although there was smoke in every bedroom neither boy was seriously injured. The defendant was eventually removed from the home and flown by helicopter to Baystate Medical Center in Springfield.[3]

Upon further examination of the house, the police and firefighters found a cardboard box of burning embers that had been placed at the top of the stairs and a six by eight inch burn in the floor carpet under the box. Adjacent to the burn pattern on the rug, there was sooting and charring on the bathroom door casing that extended twelve to fourteen inches up the door frame. The police also found a lamp oil bottle in the master bedroom, containing a substance consistent with lamp oil.

In the basement, there was a paint thinner can tipped upside down with papers piled all around the can; near the can was a visible stain on the floor of about nine feet in length and eight feet at its widest point. There were cardboard boxes near the upended can that were discolored from having absorbed the paint thinner. The entire area smelled like paint thinner. Next to a wood burning stove in the basement, there were wood lattice pieces piled on top of some papers that had been burned around the edges. Some of the lattice appeared to have been consumed by fire. Finally, all the smoke detectors had been disconnected and dismounted and were found lying in various places throughout the house.[4] We now address the alleged errors in the judge's instructions.

---

[3]Before the helicopter arrived the defendant began to wake up, moaning and crying. When asked by the paramedics if she had given the boys sleeping pills, she nodded her head without opening her eyes. When asked how many, she held up two fingers.

[4]An agent of the State fire marshal's office concluded that the fire had been deliberately set. That same agent further testified at trial that the spread of the

1. *Lesser included offense.* The defendant was indicted on one count of arson, two counts of assault with intent to murder (see G. L. c. 265, § 15[5]), and two counts of attempted murder (see G. L. c. 265, § 16[6]). At the close of the defendant's case, the judge allowed the defendant's motion for required findings of not guilty with respect to the two counts charging assault with intent to murder, but denied the motions relative to the two counts for attempted murder and the count for arson. The defendant contends that the trial judge erred by denying her request to instruct the jury on the offense of simple assault, claiming it is a lesser included offense of attempted murder.

"When the evidence permits a finding of a lesser included offense, a judge must, upon request, instruct the jury on the possibility of conviction of the lesser crime." *Commonwealth* v. *Woodward*, 427 Mass. 659, 662-663 (1998), quoting from *Commonwealth* v. *Gould*, 413 Mass. 707, 715 (1992). A crime is a lesser included offense only if all the formal elements of the lesser crime are comprised within the greater crime. See *Commonwealth* v. *Smith*, 37 Mass. App. Ct. 10, 13 (1994), and cases cited. If the lesser crime requires proof of an additional fact that the greater crime does not, then it is not a lesser included offense of the greater crime. See *Commonwealth* v. *Jones*, 382 Mass. 387, 393 (1981).

To date, the discussion whether simple assault is a lesser included offense of attempted murder has been limited to the portion of G. L. c. 265, § 16, that pertains to attempted murder

---

fire would have been more severe had the fire personnel and State troopers not arrived when they did.

[5]General Laws c. 265, § 15, provides: "Whoever assaults another with intent to commit murder, or to maim or disfigure his person in any way described in the preceding section, shall be punished by imprisonment in the state prison for not more than ten years or by a fine of not more than one thousand dollars and imprisonment in jail for not more than two and one half years." The preceding section, G. L. c. 265, § 14, establishes the crime of mayhem, which requires the "malicious intent to maim or disfigure" another, and lists specific acts that would constitute such a crime.

[6]General Laws c. 265, § 16, provides: "Whoever attempts to commit murder by poisoning, drowning or strangling another person, or by any means not constituting an assault with intent to commit murder, shall be punished by imprisonment in the state prison for not more than twenty years or by a fine of not more than one thousand dollars and imprisonment in jail for not more than two and one half years." The defendant was charged under the "by any means not constituting an assault with intent to commit murder" portion of the statute.

by poisoning, strangulation, or drowning. This court has concluded that simple assault is a lesser included offense within attempted murder by strangulation. See *Commonwealth* v. *Dixon,* 34 Mass. App. Ct. 653, 657 (1993). We are not aware of any Massachusetts case that directly addresses the question whether simple assault is a lesser included offense within attempted murder by any means not constituting an assault with intent to commit murder.[7] But see *Commonwealth* v. *Hebert,* 373 Mass. 535, 538, 540 (1977).

The elements of an attempt, here attempted murder, consist of the specific intent to kill and malice, plus "some overt act towards its commission, and failure or interruption" that prevents completion of that crime. See *Commonwealth* v. *Dixon,* 34 Mass. App. Ct. at 655. The portion of the statute at issue in this case pertains to attempted murder "by any means *not* constituting an assault with intent to commit murder" (emphasis supplied). The elements of assault with intent to commit murder are assault, the specific intent to kill, and malice. See *Commonwealth* v. *Henson,* 394 Mass. 584, 590-591 (1985). Thus, the only element of assault with intent to commit murder not comprehended within attempted murder is assault. Therefore, it follows that the phrase "by any means not constituting an assault with intent to commit murder" in G. L. c. 265, § 16, is limited to any means not constituting an assault, which would exclude simple assault as a lesser included offense of attempted murder pursuant to this portion of the statute.

Aside from the specific language of the statute, simple assault does not meet the requirements of a lesser included offense of attempted murder "by any means not constituting an assault with intent to commit murder" because not all of the elements of an assault are necessarily included in attempted murder under this portion of the statute.[8] In the instant case, the defendant argues that she committed an assault by attempting a battery on

[7]Although our appellate courts apparently have not addressed this issue, courts in other jurisdictions have found that simple assault is not a lesser included offense within attempted murder by any means not constituting assault with intent to commit murder. See *People* v. *Johnson,* 81 Cal. App. 3d 380, 388-389 (1978); *Williams* v. *State,* 323 Md. 312, 316-319 (1991); *State* v. *Grayson,* 50 N.M. 147, 149-150 (1946).

[8]"An assault is 'an attempt (or offer) to do bodily harm to another by force or violence; or simply, an attempt to commit a battery.' " *Commonwealth* v. *Dixon,* 34 Mass. App. Ct. at 657, quoting from *Commonwealth* v. *Slaney,* 345 Mass. 135, 138 (1962).

her children. An act may be done that is intended to accomplish a crime but may not come close enough to the completion of the crime to constitute an attempt. See *Commonwealth* v. *Ortiz,* 408 Mass. 463, 470 (1990). In order that an overt act intended to cause death may reach the level of an attempted battery, the act must come very close to accomplishment. See *Commonwealth* v. *Dixon,* 34 Mass. App. Ct. at 657. It is therefore possible to set in motion events which, although intended to murder, nevertheless fall so short of the mark that they do not constitute an attempted battery. In this case, it is arguable that the flames from the fire set by the defendant were never close enough to her children to constitute an attempted battery, although setting fire to the house did constitute an overt act beyond mere preparation sufficient to meet the overt act requirement of attempted murder.[9] See *Commonwealth* v. *Hebert,* 373 Mass. at 543 (Quirico, J., concurring, citing Perkins, Criminal Law 578 [2d ed. 1969]) ("the acts necessary to constitute an assault with intent to commit a particular crime must come closer to success than those required for an attempt to commit that crime").

2. *Specific intent and malice.* The defendant asserts that the trial judge erred in not giving the appropriate instruction on the specific intent and malice required to convict her of attempted murder. Because the defendant did not object to either instruction at trial, she can only prevail if she demonstrates a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Ennis,* 398 Mass. 170, 176 (1986). There was no error, let alone a substantial risk of a miscarriage of justice.

The defendant contends that the jury charge on specific intent was inadequate because the trial judge failed to define specific intent as set forth in *Commonwealth* v. *Nickerson,* 388 Mass. 246, 253-254 (1983).[10] In assessing potential errors in a judge's instruction, we evaluate the instruction as a whole. See *Commonwealth* v. *Niemic,* 427 Mass. 718, 720 (1998). We look at the "interpretation a reasonable juror would place on the judge's

---

[9]By finding the defendant guilty, the jury could have specifically found that, although her actions did constitute overt acts for the purposes of attempted murder, her conduct was nonassaultive.

[10]In *Commonwealth* v. *Nickerson,* 388 Mass. at 253-254, the court quoted with approval the trial judge's instruction that "a specific intent is 'a conscious act with the determination of the mind to do an act. It is contemplation rather than reflection and it must precede the act.' "

words" and do not analyze bits and pieces of the instruction removed from their context. *Ibid.*

Immediately prior to instructing the jury on attempted murder, the judge defined specific intent in the context of arson. The judge then instructed the jury that, in establishing specific intent for attempted murder, the Commonwealth had to prove "that the defendant focused her mind on the object offense, here murder, and intended that death result from the overt act that she employed." Taken as a whole, the judge's instruction properly conveyed to the jury that, to find the defendant guilty, the jury must find that she consciously intended to take certain actions against her sons and also intended the result of those actions to be their death. The instructions, read as a whole, did not create a substantial risk of a miscarriage of justice.

Next, the defendant claims that the judge was required to instruct the jury that the "malice which supports a conviction of second degree murder is insufficient to support a conviction of assault with intent to murder." *Commonwealth* v. *Fernette,* 398 Mass. 658, 671 (1986). In the instant case, the judge properly instructed the jury on the requirements of malice in the context of attempted murder.[11] See *Commonwealth* v. *Henson,* 394 Mass. at 591; *Commonwealth* v. *Gagnon,* 37 Mass. App. Ct. 626, 632-633 (1994), *S.C.,* 419 Mass. 1009 (1995). *Fernette* is inapposite because there the jury were also instructed on second degree murder. Here, there was no second degree murder charge, and, hence, no opportunity for confusion as to the requisite elements of malice.

*Judgments affirmed.*

---

[11]The trial judge instructed that malice "means only that [the defendant] intended to kill the victims and that such an intent to kill was unlawful, unexcused, without justification and without any mitigation . . . ."