# COMMONWEALTH *vs.* DAVID ORMONDE.

No. 00-P-1087.

Bristol. February 7, 2002. - June 14, 2002.

Present: ARMSTRONG, C.J., KASS, & BERRY, JJ.

*Attempt. Homicide. Assault with Intent to Rape. Practice, Criminal,* Argument by prosecutor, Instructions to jury. *Malice. Intent.*

Evidence at a criminal trial was sufficient to warrant the defendant's convictions of assault with intent to rape and attempted murder. [232-234]

At a criminal trial, the prosecutor's closing argument seeking to encourage the jurors not to believe the defendant, and challenging the defendant's credibility, was not, in the circumstances, improper. [235-236]

At a criminal trial in which the judge instructed the jury, on attempt to murder by strangling, that they must find beyond a reasonable doubt that the defendant had a specific intent to kill the victim, that he committed an overt act to that end, and that his act did not result in a completed crime, there was no error, and therefore no substantial risk of a miscarriage of justice, where the instructions requiring a specific intent to kill the victim, as opposed to the three-pronged charge of malice sought by the defendant, were more favorable to the defendant, and where the jury were adequately informed that they might consider whether there was justification, mitigation, or excuse for the defendant's act. [236-237]

INDICTMENTS found and returned in the Superior Court Department on October 1, 1998.

The cases were tried before *John A. Tierney*, J.

*Joseph S. Berman* for the defendant.

*Kevin Connelly*, Assistant District Attorney, for the Commonwealth.

KASS, J. David Ormonde was convicted by a jury of attempted murder (G. L. c. 265, § 16[1]), assault with intent to commit

[1]Section 16 of c. 265 provides that "[w]hoever attempts to commit murder by poisoning, drowning or strangling another person . . . shall be punished . . . ." By this provision, the General Laws differentiate an attempted murder by those particular means from other methods of attempted murder that

rape (G. L. c. 265, § 24), kidnapping (G. L. c. 265, § 26), and three other crimes.[2]

His principal points on appeal concern (1) sufficiency of the evidence of assault with intent to rape and attempted murder; (2) improper closing argument by the prosecutor; and (3) errors in the jury instructions. We affirm.

1. *Sufficiency of the evidence.* There was evidence which, if taken in the light most favorable to the prosecution, *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), allowed a rational trier of fact — here a jury — to find the following facts. See *Commonwealth* v. *Lydon*, 413 Mass. 309, 312 (1992); *Commonwealth* v. *Russell*, 46 Mass. App. Ct. 307, 308-309 (1999).

On September 11, 1998,[3] a Friday, Sally Paine[4] was on duty, alone, as night auditor at a Susse Chalet motel in Seekonk. In that capacity, she attended to the reception desk. At about 11:50 P.M., a man, dried blood on his face, walked in and asked for an inexpensive room. Paine registered the guest, who was the defendant David Ormonde; he had presented a driver's license as identification. Paine assigned Ormonde to room 121, and gave him a plastic card key to that room. Paine gave Ormonde instructions on how to use the key and demonstrated its use as well.

Moments later, Ormonde returned to the front desk to say he could not make the key open the door to his room. Paine demonstrated a second time how the card key worked. Or-

would be within the reach of the generic attempt to commit crimes statute that appears at G. L. c. 274, § 6.

[2]Assault and battery (G. L. c. 265, § 13A); indecent assault and battery on a person fourteen or older (G. L. c. 265, § 13H); and assault and battery with a dangerous weapon (G. L. c. 265, § 15A[*b*]). On the convictions of attempted murder and assault with attempt to commit rape, the trial judge imposed consecutive nineteen- to twenty-year sentences. As to the convictions of kidnapping and assault and battery on a person fourteen or older, the judge imposed sentences of probation for life, with a no-contact order. The convictions on the remaining indictments were filed.

[3]In his direct examination of the victim, the prosecutor directed her attention to "September 11, September 12, 1998." The indictments state that the offenses occurred on or about September 12, 1998. We take it that September 11, 1998, refers to the beginning of the events, and September 12, 1998, to when the crimes charged occurred.

[4]A fictitious name.

monde asked Paine to come and show him how to open the door. She declined. Soon thereafter, Ormonde reappeared in the lobby, complaining that he still could not get the key to work and importuning Paine once again to go down to his room to show him how the key worked. Again Paine declined to leave her post to accompany Ormonde. Instead, she switched him to a different room, room 201, closer to the reception lobby, and issued him a new key.

Ormonde apparently found his way into his newly assigned room because, before long, a telephone call from room 201 lit up on Paine's switchboard. Paine told Ormonde, whose voice she recognized, that she could not leave her work station to help him. After a second, similar phone call, Ormonde resurfaced in the lobby. His television set was not working, he complained, and he was having fresh trouble with his card key. Vexed by Ormonde's repeated interruptions of her work, Paine walked in front of him to room 201, demonstrated use of the card key, and opened the door for him. Ormonde said he could not remember where the light switch was. Paine pointed to where it was and, at that, Ormonde put his hands around her throat and tightened them to a chokehold. While choking her, Ormonde dragged Paine into the room and forced her onto a bed.

As Paine struggled, Ormonde murmured, "You're going to be good. You're going to be nice. You're going to give me what I want." Paine could not scream because her "throat was totally closed off." For a brief period, Paine lost consciousness. She reawakened to a beating around the head, particularly the ears. Ormond then forced Paine on the floor by pulling on her throat. With his pants pushed down, Ormonde tore off Paine's pantyhose. He made contact with his penis against her buttocks and vaginal area. He continued saying, "Be good," and "You're going to be nice." There was no penetration. After concluding this sexual assault, Ormonde warned Paine, "You're not going to tell anybody. I'll let you go if you don't tell anybody." He repeated that demand several times. Just as Paine thought her assailant was leaving, he seized her pantyhose and, using it as a ligature, choked her. Again Paine lost consciousness. When she awoke, Ormonde was gone. Paine made her way to her work station in the lobby and called 911.

Missing from the record, Ormonde argues, is any evidence that warrants a finding that he had formed the specific intent to rape Paine or to kill her. Intent, of course, is a factor that a jury more often than not must find by making inferences. *Commonwealth* v. *LaPerle*, 19 Mass. App. Ct. 424, 427 (1985). A defendant seldom accommodates the finder of fact with a declaration that he intended to rape or kill. Contrast *Commonwealth* v. *Beattie*, 29 Mass. App. Ct. 355, 357 (1990), *S.C.* 409 Mass. 458 (1991) (defendant told his girl friend that he was going to kill his wife). The inferences that jurors may draw need not be inescapable; it is sufficient if they are reasonable in the sense of being rationally derived from the evidence. *Commonwealth* v. *Beckett*, 373 Mass. 329, 341 (1977). *Commonwealth* v. *Russell*, 46 Mass. App. Ct. at 308.

As to Ormonde's intent to rape, that inference on the basis of the circumstantial evidence was not only reasonable, it verges on the inescapable: the dragging of Paine to the bed and to the floor; the pulling up of her skirt; Ormonde's lowering his pants; the pulling off of Paine's pantyhose; and the contact of his genitalia with hers. What Ormonde said to Paine as he dragged and choked her was verbal confirmation of his intent to rape her.

In the case of the attempted murder, Ormonde's intent to kill Paine is less obvious, but, on the record, may nevertheless be fairly inferred. There was evidence that, after warning Paine to say nothing, Ormonde choked her with the pantyhose until she lapsed into unconsciousness, and then left her in a locked room. Jurors could rationally and reasonably have inferred that Ormonde wanted Paine silent — therefore dead — and left her for dead. See *Commonwealth* v. *Grogan*, 11 Mass. App. Ct. 684, 686-687 (1981) (evidence that defendant had put hands around victim's neck, with thumbs on the front of her neck, "in itself would warrant the jury in concluding that he intended to strangle her"); *Commonwealth* v. *Shea*, 38 Mass. App. Ct. 7, 14 (1995) (intent to kill could be inferred from throwing women overboard five miles off-shore). How to weigh the evidence was for the jury. *Commonwealth* v. *Beattie*, 409 Mass. at 460. *Commonwealth* v. *Lydon*, 413 Mass. at 312. *Commonwealth* v. *Coleman*, 434 Mass. 165, 169 (2001). Inferring Ormonde's intent to kill, given the circumstances, was not just conjecture.

2. *Propriety of prosecutor's closing argument.* Much in the closing argument was on the crude side. Juries are entitled to better than, "[d]on't let the smoke fool you"; "throw [the defendant's testimony] out the window, because it's all baloney"; "[t]his case is . . . about a desperate man, a predator getting his prey into that motel room and leaving her there for dead"; and "take everything [the defendant] said and throw it in the garbage can." Prosecutors may, however, encourage jurors not to believe the defendant, and they may challenge the defendant's credibility. *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 746 (1990). *Commonwealth* v. *Johnson*, 41 Mass. App. Ct. 81, 89 (1996). That is what the prosecutor's bombast amounted to in this case.

In other respects, the prosecutor stepped unnecessarily close to the third rail. He sneered that Ormonde was "trying to tailor his testimony to fit the facts, to fit the photos." That resembles, although is significantly different from, the comment of the prosecutor in *Commonwealth* v. *Person*, 400 Mass. 136, 139 (1987), about the defendant having tailored his testimony after sitting through the Commonwealth's case. The particular vice in *Person* was the prosecutor's suggestion that the defendant waited until the Commonwealth had presented its case before testifying adversely. *Id.* at 142. In the instant case, the prosecutor's comment, better not made, was just further ridicule of the defendant's testimony. The prosecutor displayed an undesirable propensity to imagine what Ormonde was thinking, what Ormonde's brief on appeal derides as "fabrication of interior monologue." See *Commonwealth* v. *Pope*, 406 Mass. 581, 587 (1990). Cf. *Commonwealth* v. *Roberts*, 378 Mass. 116, 122-123 (1979). We give the jury credit for filtering a certain amount of prosecutorial hyperbole. *Commonwealth* v. *Good*, 409 Mass. 612, 626 (1991).

As to the persistent description of Ormonde as a "predator," who "lurked" to pounce on his "prey," that was not unrelated to the theory of the Commonwealth's case and the evidence that Ormonde set a trap for Paine. See *Commonwealth* v. *MacDonald*, 368 Mass. 395, 402 (1975). Contrast *Commonwealth* v. *Sheehan*, 435 Mass. 183, 190-191 (2001). Compare *Commonwealth* v. *Collins*, 374 Mass. 596, 601 (1978) (reference to

defendant as an "animal" characterized as impermissible excess).

3. *Jury instructions.* At the conclusion of the trial judge's instructions, defense counsel made two objections. The first concerned the charge on kidnapping and the defendant does not press that point on appeal. The second objection asked the judge "to consider giving some type of specific unanimity instruction that they must be — in order to find — to consider a separate attempted murder separate from the assault and battery dangerous weapon, they'd have to find different acts." The request misconceives the occasion on which a unanimity instruction is required; it is required when alternative sets of facts would support a finding of guilty on a particular indictment. See *Commonwealth* v. *Ramos*, 31 Mass. App. Ct. 362, 366-367 (1991), in which the point is discussed. A unanimity instruction is not required just because the defendant has been tried on more than one charge. The judge made it abundantly clear that, as to each crime charged, the jurors were to arrive at a verdict unanimously.

On appeal, new counsel raises various objections to the instructions *not* made at trial. We have reviewed the claims of error under the substantial risk of a miscarriage of justice standard but consider only one worthy of discussion. See *Commonwealth* v. *Ennis*, 398 Mass. 170, 176 (1986); *Commonwealth* v. *Murray*, 51 Mass. App. Ct. 57, 62 (2001). In charging the jurors on attempt to murder by strangling, the judge told them they must find beyond a reasonable doubt (1) that Ormonde had a specific intent to kill Paine; (2) that he committed an overt act to that end; and (3) that his act did not result in a completed crime. That instruction accords with *Commonwealth* v. *Beattie*, 409 Mass. at 459: "The judge properly charged the jury that, to convict the defendant of attempted murder, they had to find beyond a reasonable doubt that the defendant did an act designed to result in death with the specific intent that death result." See *Commonwealth* v. *Maloney*, 399 Mass. 785, 788 (1987) (crime of attempted murder requires proof of intent to kill). Cf. *Commonwealth* v. *Murray*, 51 Mass. App. Ct. 57, 62 (2001).

As we understand the defendant's argument, the jury should

also have been instructed about malice, i.e., that the uncompleted homicidal act was without justification and the consequence of one of the three prongs of malice: actual intent to kill, actual intent to inflict grievous bodily harm, or committing an act which a reasonably prudent person would know is likely to result in the death of the victim. *Commonwealth* v. *Moore*, 408 Mass. 117, 134 n.9 (1990).

As to malice, insofar as it may not be presumed in the case of poisoning, drowning, or strangling, the judge required the jury to find the most demanding — so far as the prosecution was concerned — of the three prongs, i.e., that the defendant intended to kill the victim. Indeed, as was appropriate to the crime charged, the judge instructed the jury that to convict Ormonde, they had to find a *specific* intent to kill the victim. As opposed to a three-pronged charge, this instruction was favorable to the defendant. It is more difficult to prove specific intent that death result than intent to cause grievous bodily harm or commission of an act which a reasonably prudent person would know was likely to cause death.

On the question of justification or mitigation, the judge instructed the jury about self-defense and that they were to consider whether the defendant was so impaired by alcohol or drugs as to be incapable of forming a specific intent. The jury were adequately informed that they might consider whether there was justification, mitigation, or excuse for the defendant's homicidal act. There was no error, and therefore no substantial risk of miscarriage of justice. See and compare *Commonwealth* v. *Murray*, 51 Mass. App. Ct. at 62-63.

*Judgments affirmed.*