# In the Iowa Supreme Court

No. 21–1425

Submitted November 13, 2024—Filed February 14, 2025

**State of Iowa,**

Appellee,

vs.

**Gerry Harland Greenland,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Decatur County, John D. Lloyd, senior judge.

The defendant appeals his convictions of attempted murder of a peace officer and assault on a peace officer, challenging the sufficiency of the evidence supporting the convictions and arguing the convictions merge. **Decision of Court of Appeals and District Court Judgment Affirmed.**

McDonald, J., delivered the opinion of the court, in which all justices joined.

Richard Hollis, Des Moines, and Kelsey L. Knight (until withdrawal) of Carr Law Firm, P.L.C., Des Moines, for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven and Andrew Prosser, Assistant Attorneys General, for appellee.

**McDonald, Justice.**

Gerry Greenland was convicted of attempt to commit murder, in violation of Iowa Code section 707.11 (2019); assault on persons engaged in certain occupations, a peace officer, with intent to cause serious injury and while using a dangerous weapon, in violation of Iowa Code sections 708.1 and 708.3A; and assault, in violation of Iowa Code section 708.1. The question presented in this appeal is whether Greenland's conviction for assault on persons engaged in certain occupations, a peace officer, is necessarily included in and merges into his conviction for attempt to commit murder.

I.

The record, when viewed in the light most favorable to the State, establishes the following. On May 23, 2019, Greenland was inside the house on the family farm located near Grand River. Greenland's nephew, Trevor Greenland, and a hired farmhand, Brandon Quayle, were in the shop on the farm repairing a truck previously owned by Greenland's deceased father. They intended to repair the truck and sell it. Greenland decided to investigate Trevor and Quayle's activities. He approached the men in the shop to determine what they were doing. They had a brief conversation before Greenland returned to the house.

After Greenland returned to the house, Trevor and Quayle chained the truck to a tractor. They pulled the truck down the driveway onto the road in an attempt to pull-start the truck. Greenland again exited the house and approached the men. According to the district court's findings, Trevor was seated in the truck when Greenland approached the truck, opened the door, and punched Trevor twice in the face without provocation. Trevor and Quayle then wrestled Greenland to the ground and held him there until he calmed down.

After he calmed down, the men released Greenland, and he returned to the house.

Trevor then called Monte Greenland, his father and Greenland's brother. Trevor informed Monte of what had happened and asked him to come to the farm. Trevor also called the Decatur County Sheriff's Department to report the incident.

At some point after this, Greenland again exited the residence. He approached the tractor, unhooked the truck, and drove the tractor back to the shop. Monte arrived at the farm shortly thereafter. Monte and Greenland exchanged heated words. During the exchange, Monte noticed Greenland holding a crowbar-like object. Greenland then retreated into the shop and jumped into the tractor. Greenland had affixed two "bale spears" to the front of the tractor. These bale spears were metal rods, approximately five to six feet long, angled slightly upward, and capable of being raised and lowered by a hydraulic lift. When fully lowered, the tractor and bale spears resembled a forklift. Greenland drove the tractor toward Monte in an attempt to strike him, but Monte evaded the tractor. Having missed Monte, Greenland drove the tractor—with the bale spears lowered—into Monte's vehicle, damaging the frame. Greenland then chased Trevor, Monte, and Quayle around the farm with the tractor.

Trevor, Monte, and Quayle eventually escaped up the road and waited for law enforcement to arrive. Decatur County Deputy Sheriff Randy Arnold was the first peace officer on the scene. He was in full uniform and driving a marked squad car with the emergency lights activated. As Deputy Arnold approached the farm, he observed Greenland driving a utility vehicle. He observed Greenland return to the shop and enter the tractor. Greenland then raised the bale spears approximately three and a half feet off the ground and drove the tractor toward

Deputy Arnold's vehicle. Deputy Arnold eluded Greenland, and a bad game of "cat and mouse" ensued. Shortly thereafter, Sheriff Ben Boswell arrived in an unmarked squad car. He had activated the emergency lights located at the visor level of the windshield, on the front grille, around the license plate, along the running boards, and at the rear of the vehicle. His license plate displayed a law enforcement badge and identified the vehicle as "Iowa Sheriff." Deputy Todd Savely was just behind Sheriff Boswell in a marked squad car with the emergency lights activated.

Once Sheriff Boswell entered the property, he pulled his squad car off the side of the driveway so Greenland could drive past without issue. Greenland declined. Instead, Greenland advanced down the driveway and then swerved the tractor into the front driver's side of Sheriff Boswell's squad car. One bale spear entered the passenger compartment of the vehicle after it pierced the wheel well. The second spear punctured the vehicle just above the handle of the driver's door. While the spears did not make direct contact with Sheriff Boswell, they caused the door of the vehicle to crumple and become pressed against Sheriff Boswell's body. Greenland then shifted the tractor into gear and pushed the squad car—with Sheriff Boswell inside—down the driveway onto the road. Greenland eventually drove the tractor and squad car into a ditch. Greenland was apprehended at the scene.

The case was tried to the district court, and the district court found Greenland guilty of attempt to commit the murder of Sheriff Boswell, in violation of Iowa Code section 707.11; assault on persons in certain occupations—a peace officer, Sheriff Boswell—with intent to cause serious injury and while using a dangerous weapon, in violation of Iowa Code sections 708.1 and 708.3A; and simple misdemeanor assault on Trevor, in violation of Iowa Code section 708.1.

The district court sentenced Greenland to concurrent terms of incarceration for each of the convictions, with a total term of incarceration not to exceed twenty-five years. The district court did not merge any of the convictions.

Greenland filed this appeal, and we transferred the case to the court of appeals. Greenland argued that there was insufficient evidence to support his convictions for attempt to commit murder and assault on persons in certain occupations. He argued that there was insufficient evidence to prove he intended to set in motion a force or chain of events that would cause or result in the death of Sheriff Boswell, that he intended to cause serious injury, and that he knew his actions were directed at a peace officer. Greenland also argued that the district court erred in failing to merge the convictions because assault on persons in certain occupations is a lesser included offense of attempt to commit murder. *See State v. Braggs*, 784 N.W.2d 31, 36–37 (Iowa 2010); *State v. Powers*, 278 N.W.2d 26, 28 (Iowa 1979).

The court of appeals affirmed Greenland's convictions. It held there was sufficient evidence supporting Greenland's convictions. The court of appeals reasoned that there was sufficient circumstantial evidence to prove Greenland knew Sheriff Boswell was a peace officer. Specifically, the court of appeals explained, "Sheriff Boswell arrived in a white, unmarked SUV with blue and red flashing lights clearly displayed in the front window facing Greenland and near the front license plate marked with a sheriff star. Sheriff Boswell was followed closely by a third law enforcement vehicle also with emergency lights flashing. Greenland had a clear view of the front of Sheriff Boswell's car and the emergency lights . . . before choosing to turn and ram the vehicle." The court of appeals also concluded that there was sufficient circumstantial evidence Greenland intended to cause serious injury or death to Sheriff Boswell. Specifically, Greenland raised

the spears to pierce Sheriff Boswell's vehicle and then specifically turned to pierce the driver's side door of the vehicle. The court of appeals also held that the convictions did not merge because the attempt to commit murder and the assault were based on "separate and distinct actions."

We granted Greenland's application for further review. "When we grant further review, we have discretion to let the court of appeals decision stand on specific issues." *State v. Wade*, 7 N.W.3d 511, 514 (Iowa 2024). We exercise that discretion here and address only Greenland's claim that his convictions for assault on persons in certain occupations and attempt to commit murder should merge pursuant to Iowa Code section 701.9. The court of appeals decision is final with respect to Greenland's challenge to the sufficiency of the evidence.

## II.

Iowa's merger statute provides, "No person shall be convicted of a public offense which is necessarily included in another public offense of which the person is convicted. If the jury returns a verdict of guilty of more than one offense and such verdict conflicts with this section, the court shall enter judgment of guilty of the greater of the offenses only." *Id.* This statute prevents a person from being twice convicted for the same offense, but it does not apply when there are separate offenses. *See State v. Walker*, 610 N.W.2d 524, 526–27 (Iowa 2000) (en banc). When a charge arises "from a different act with different people at a different time" than another charge, "they are two separate and distinct offenses," which are not subject to merger. *State v. Dittmer*, 653 N.W.2d 774, 777 (Iowa Ct. App. 2002). Where the statute does apply, "[a] district court's failure to merge convictions as required by statute results in an illegal sentence. Such claims may be raised at any time." *State v. Love*, 858 N.W.2d 721, 723 (Iowa

2015). "Review of an illegal sentence for lack of merger is for correction of errors at law." *Id.*

To determine whether a defendant has been convicted of a public offense that is necessarily included in another public offense within the meaning of the statute, we examine the elements of the two offenses. *State v. Brown*, 996 N.W.2d 691, 697 (Iowa 2023) (stating we apply the "legal-elements test" (quoting *State v. Johnson*, 950 N.W.2d 21, 24 (Iowa 2020))); *see also State v. Johnson*, 950 N.W.2d 232, 237 (Iowa 2020) ("In deciding whether a crime is a lesser included offense, we look to the elements of the offense . . . ."); *Krogmann v. State*, 914 N.W.2d 293, 325 (Iowa 2018) ("Importantly, this test is 'purely a review of the legal elements . . . .' " (quoting *Love*, 858 N.W.2d at 725)). In particular, the Code and our cases instruct that we examine the elements of the offense as instructed. *See* Iowa Code § 701.9 ("If the jury returns a verdict of guilty of more than one offense and such verdict conflicts with this section, the court shall enter judgment of guilty of the greater of the offenses only."); *Brown*, 996 N.W.2d at 697–98 (applying the legal-elements test to the marshaling instruction); *State v. Cook*, 996 N.W.2d 703, 710–11 (Iowa 2023) (same); *State v. Hickman*, 623 N.W.2d 847, 850–51 (Iowa 2001) (en banc) (same); *State v. Lambert*, 612 N.W.2d 810, 815–16 (Iowa 2000) (en banc) (same); *State v. Anderson*, 565 N.W.2d 340, 344 (Iowa 1997) ("When a statute provides alternative ways of committing the offense, the [statutory] alternative[s] submitted to the [factfinder] control[]."); *State v. Morgan*, 559 N.W.2d 603, 612 (Iowa 1997) (holding merger was required "[a]fter examining the manner in which these charges were submitted to the jury"). In examining the elements as articulated at trial, we ask whether "the first (greater) crime include[s] every essential element of the second (lesser) crime." *Johnson*, 950 N.W.2d at 236. "If the greater offense cannot be committed without also

committing the lesser offense, the lesser is included in the greater," and the convictions merge under section 701.9. *Hickman*, 623 N.W.2d at 850. Stated differently, the greater offense must "complete[ly] overlap" the lesser offense to require merger under section 701.9. *State v. Bloom*, 983 N.W.2d 44, 51 (Iowa 2022).

Applying that law here, our analysis begins with a recitation of the elements of the greater offense, attempt to commit murder. "A person commits the offense of attempt to commit murder when, with the intent to cause the death of another person and not under circumstances which would justify the person's actions, the person does any act by which the person expects to set in motion a force or chain of events which will cause or result in the death of the other person." Iowa Code § 707.11(1). The district court marshaled the elements as follows:

> 1. On or about May 23, 2019, the defendant operated a vehicle in such a way as to bring it into contact with another vehicle.
>
> 2. By his acts, the defendant expected to set in motion a force or chain of events that would cause or result in the death of Sheriff Ben Boswell.
>
> 3. When the defendant acted, he specifically intended to cause the death of Ben Boswell.

In addition to these offense elements, the State also requested the imposition of a sentencing enhancement because the crime was directed against a peace officer. *See id.* § 707.11(5). The district court acknowledged the sentencing enhancement in its written findings and verdict, stating, "If found guilty, the fact finder is also required to determine 'whether the attempt to commit murder was committed against a peace officer, with the knowledge that the person against whom the attempt to commit murder was committed was a peace officer acting in the officer's official capacity.'" (Quoting *id.* § 707.11(5)(*b*).)

With respect to the lesser offense, Greenland was convicted of assault on persons in certain occupations, a peace officer, with the intent to cause serious injury and while using a dangerous weapon, in violation of Iowa Code sections 708.1 and 708.3A. The district court articulated the elements as follows:

1. On or about May 23, 2019, the defendant did an act that was intended to (a) cause pain or injury, (b) result in physical contact that was insulting or offensive, or (c) place Sheriff Ben Boswell in fear of an immediate physical contact that would have been painful, injurious, insulting or offensive to him.

2. The defendant had the apparent ability to do the act.

3. The act was done either

(a) with the specific intent to cause a serious injury, or

(b) while using or displaying a dangerous weapon.

4. At the time of the assault, the defendant knew Sheriff Ben Boswell was a peace officer.

Under the elements test, Greenland's convictions for attempted murder and assault on persons in certain occupations do not merge under section 701.9. The assault offense involved alternative theories—that the act was done with the specific intent to cause a serious injury or while using or displaying a dangerous weapon. Typically, when an offense contains alternative theories, "the test for included offenses must be applied to each alternative." *State v. Goodson*, 958 N.W.2d 791, 804 (Iowa 2021) (quoting *Hickman*, 623 N.W.2d at 851). "[W]hen alternatives are present and one alternative requires merger, merger is required if it is impossible to determine which alternative the jury used." *Id.* (quoting *Bryson v. State*, 886 N.W.2d 860, 864 (Iowa Ct. App. 2016)). Conversely, where, as here, we can determine which alternative or alternatives the factfinder used, merger is not required if one of the alternative theories found does not merge. *See* Iowa Code § 701.9 (stating we look to the "verdict of guilty" to determine

whether the statute requires merger). The district court found Greenland guilty under both theories. The use or display of a dangerous weapon was not an element of attempted murder as marshaled here. *See State v. Gayles*, 327 N.W.2d 1, 3 (Minn. 1982) (en banc) ("[A]ssault with a dangerous weapon is not a necessarily included offense of attempted murder in the second degree."). Thus, the greater offense of attempted murder does not completely overlap the lesser offense of assault on persons in certain occupations while using or displaying a dangerous weapon, and merger is not required.

Greenland resists this conclusion. He relies on *State v. Braggs*, 784 N.W.2d at 36–37, for the proposition that assault is always a lesser included offense of attempted murder. In that case, the defendant forced his way into an apartment and stabbed a woman multiple times with a knife. *Id.* at 33. He was arrested and charged with attempted murder and other offenses. *Id.* During trial, the district court instructed the jury that assault was a lesser included offense of attempted murder, and the jury acquitted the defendant of attempted murder but found him guilty of the lesser included offense of assault. *Id.* at 34. This court was presented with the question of whether "trial counsel was ineffective in failing to object to the instruction on assault as a lesser-included offense of attempt to commit murder." *Id.* at 33. This court held that "assault under Iowa Code section 708.1(1) (2005) is a lesser-included offense of attempt to commit murder, and, therefore, Braggs's counsel was not ineffective for failing to object to the instruction on this offense." *Id.* In reaching that conclusion, the *Braggs* court stated that "it is impossible to commit attempted murder without also performing an act which meets the statutory definition of an assault." *Id.* at 36–37. Greenland argues that this statement in *Braggs* establishes that his

convictions for attempt to commit murder and assault on persons in certain occupations must merge under section 701.9.

The State requests that we overrule *Braggs* as wrongly decided. We decline that request. *Braggs* involved only the limited question of whether counsel was ineffective in failing to object to the jury being instructed that assault was a lesser included offense of attempted murder. *Id.* at 33. As the *Braggs* court concluded, assault can be, and typically is, a lesser included offense of murder and attempted murder when the actus reus is an assault. *Id.* at 36–37; *see also State v. Johnson*, 7 N.W.3d 504, 507 (Iowa 2024) (noting the defendant was convicted of assault as a lesser included offense of murder and attempted murder); *Cook*, 996 N.W.2d at 707 (noting assault is a lesser included offense of attempted murder); *State v. Wilson*, 941 N.W.2d 579, 583 (Iowa 2020) (same). Based on the nature of the attempted murder in that case—assault with a knife— it appears that the *Braggs* court was correct in concluding that assault was a lesser included offense of attempted murder. However, *Braggs* did not even address the question presented in this case—whether two separate convictions should merge under section 701.9—because the defendant in that case was acquitted of attempted murder but convicted of assault. 784 N.W.2d at 34.

Although we decline to overrule *Braggs*, we do not believe that case provides Greenland with any relief. The *Braggs* court went too far in stating that "it is impossible to commit attempted murder without also performing an act which meets the statutory definition of an assault," *id.* at 36–37, and we disavow that statement. This court has cited *Braggs* only once since it was decided but not for that proposition, *see Krogmann*, 914 N.W.2d at 325, and the proposition itself is demonstrably incorrect, as the following hypothetical demonstrates.

Suppose a prisoner was angry with a state investigator who testified against him at trial. The prisoner decides he wants the investigator killed. A fellow inmate tells the prisoner he can make that happen. The prisoner—from his prison cell—prepares a detailed map for a would-be hitman to locate the investigator's home, enlists a family member to research personal information about the investigator, and signs a promissory note agreeing to pay his fellow inmate upon completion of the murder. After signing the promissory note, the prisoner—much to his dismay—learns that his fellow inmate was working with law enforcement. The court of appeals affirmed a defendant's conviction for attempted murder on similar facts. *See State v. Leggio*, No. 09–0990, 2010 WL 624221, at *1–6 (Iowa Ct. App. Feb. 24, 2010). This was the correct result; the prisoner acted with the intent to cause the investigator's death and "committed overt acts by which he expected to set in motion a force or chain of events which could have caused or resulted" in the investigator's death. *Id.* at *5; *see also* Iowa Code § 707.11(1); *State v. Young*, 686 N.W.2d 182, 185 (Iowa 2004) (" '[W]ill cause' in section 707.11 refers to the type of act that is in furtherance of the required specific intent to commit the crime of attempted murder, thus factual possibility or probability of success is utterly irrelevant to that analysis."); *State v. Roby*, 188 N.W. 709, 714 (Iowa 1922) ("Whenever the design of a person to commit crime is clearly shown, slight acts done in furtherance of that design will constitute an attempt . . . ."). However, the prisoner's conduct did not also constitute an assault. *See* Iowa Code § 708.1(2).

In accord with the hypothetical, it appears to be generally accepted that one can commit attempted murder without also committing an assault and that assault is thus not always and necessarily a lesser included offense of attempted murder. *See* 4 John L. Yeager & Ronald L. Carlson, *Iowa Practice: Criminal Law*

*and Procedure* § 161, at 49 (1979) ("[A]ll attempted homicides are not assaults . . . ."); *see also State v. Von Deck*, 607 So. 2d 1388, 1389 (Fla. 1992) (per curiam) ("It is possible to commit an attempted murder without also committing aggravated assault, such as where the victim remains unaware of the attempted murder until some time has elapsed after the commission."); *Commonwealth v. Murray*, 742 N.E.2d 1107, 1111 (Mass. App. Ct. 2001) ("It is therefore possible to set in motion events which, although intended to murder, nevertheless fall so short of the mark that they do not constitute an attempted battery."); *Gayles*, 327 N.W.2d at 3 ("One can commit attempted murder in the second degree without committing an assault and without using a dangerous weapon."); *People v. Lord*, 478 N.Y.S.2d 425, 427 (App. Div. 1984) ("Assault is not a lesser included offense of attempted murder."); *State v. Barnes*, 759 N.E.2d 1240, 1246 (Ohio 2002) ("[F]elonious assault . . . is not a lesser included offense of attempted murder because it is possible to commit the greater offense without committing the lesser one."); *State v. Turner*, 23 P.3d 499, 507 (Wash. 2001) (en banc) ("This Court has previously held that assault is not a lesser included offense of attempted murder in the first degree.").

Finally, we note the *Braggs* court's conclusion that it is impossible to commit attempted murder without also committing an assault is also contrary to the purpose behind the 1978 Code revision. Prior to 1978, Iowa did not recognize an offense for attempt to commit murder that was distinct from assault. Iowa Code section 690.6 (1977), titled "Assault with intent to murder," served as the predecessor to our modern attempt to commit murder statute. However, that law only criminalized the act of "assault[ing] another with intent to commit murder." *Id.* There was no stand-alone criminal statute for an attempt to commit murder where no assault occurred. Following the 1978 Code revision,

the definition of attempted murder was expanded to encompass conduct reaching beyond assault. This is evident from the repeal of Iowa Code section 690.6 and the enactment of a stand-alone offense for attempt to commit murder, Iowa Code section 707.11 (Supp. 1977). 1976 Iowa Acts ch. 1245 (ch. 1), § 711, (ch. 4), § 526. The newly enacted Iowa Code section 707.11 entirely removed the assault requirement and instead only required that a person do "any act by which he or she expects to set in motion a force or chain of events which will cause or result in the death of such other person." This statutory change demonstrates the legislature's recognition that attempt to commit murder does not always require proof of an assault, that assault is not always a lesser included offense of attempt to commit murder, and that a conviction for assault does not always merge into a conviction for attempt to commit murder. And that is the exact conclusion we reach today in disavowing *Braggs*'s erroneous statement that it is impossible to commit attempted murder without also committing an assault.

## III.

Greenland's convictions for attempt to commit murder and assault on persons in certain occupations do not merge. Under the controlling statute, merger is not required unless there are "verdict[s] of guilty of more than one offense and such verdict[s]" establish that one offense is "necessarily included in another public offense." Iowa Code § 701.9 (2019). In determining whether one offense is necessarily included in another public offense, we look to the elements of the offense as marshaled. As explained above, the offense of assault on persons in certain occupations while using or displaying a dangerous weapon is not necessarily included in the offense of attempt to commit murder because the attempt to commit murder does not require proof of use or display of a dangerous

weapon. *Braggs* does not require a different result. *Braggs* held only that counsel was not ineffective in failing to object to a lesser included offense instruction that was appropriate under the facts and circumstances of that case. 784 N.W.2d at 37. The statement in *Braggs* that "it is impossible to commit attempted murder without also performing an act which meets the statutory definition of an assault," *id.* at 36–37, is demonstrably erroneous, and we disavow it.

**Decision of Court of Appeals and District Court Judgment Affirmed.**